# Richmond.

## JONES' ADMINISTRATOR V. CITY OF RICHMOND.

### March 16, 1916.

#### Absent, Keith, P.

1. MUNICIPAL CORPORATIONS—*Ministerial Duties—Improving Streets—Negligent Performance.*—A city, in grading and improving its streets and in removing the surplus earth to a place of deposit, exercises a ministerial duty and is liable for an injury resulting from the negligent manner in which that duty is performed. This is not a governmental function.

2. PROXIMATE CAUSE—*Wounding—Lockjaw Ensuing.*—Where a wound is negligently inflicted upon a person and in one week thereafter lockjaw ensues from which he dies, and there is no other wound on his body through which the infection could have entered, the negligent act is the proximate cause of the death. The negligent act produced the injury, the injury produced the lockjaw, and the lockjaw produced death. There is no break in the chain of causation from the alleged negligent act to the death. The lockjaw was neither an independent nor superseding cause.

3. INSTRUCTIONS—*Burdening Jury with Extended Examination of Pleadings.*—An instruction which devolves upon the jury the task of evolving from a long declaration containing several counts whether the defendant was guilty of negligence "in manner and form as alleged in the declaration, or some count thereof" should not be given, and it is not error to refuse it.

4. INSTRUCTIONS—*Directing Verdict on Incomplete Statement of Facts.*—It is not error to refuse an instruction which concludes with a direction to find for the plaintiff when it does not contain a complete statement of all facts necessary to a recovery.

5. INSTRUCTIONS—*Street Crossings—Right of Way—Traffic Ordinance.*—Where a traffic ordinance of a city provides that all vehicles and street cars going east and west shall have the right of way over all vehicles and street cars going north and south, an instruction is defective which tells the jury that, at crossings at the intersection of streets, the rights and duties of street car companies and the public are equal.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The following instructions were asked for by the plaintiff, all of which were refused:

## INSTRUCTION No. 1.

Even though the jury believe from the evidence that the motorman of the car upon which the plaintiff's intestate was conductor, at the time of his injury, was guilty of negligence in the management of said car which directly contributed to cause the injury to the plaintiff's intestate, yet such negligence of the motorman, if there was negligence, cannot be imputed to the plaintiff's intestate so as to prevent recovery in this case if the circumstances hereinafter mentioned existed, and if the jury believe from the evidence under the instructions of the court, that they existed, and that the driver of the wagon of the defendant which collided with the street car was guilty of negligence in manner and form as alleged in the declaration, or some count thereof, and that such negligence of the said driver directly and proximately concurred with the negligence of the said motorman to cause the injury to the plaintiff's intestate and that said injury would not have occurred but for the negligence of said driver, and if the jury further believe from the evidence, that the driver of the said wagon was in the employ of the defendant as its servant at the time and place in question and was acting within the scope of his employment at the said time and place, and if the jury further believe from the evidence under the instructions of the court, that the plaintiff's intestate was in the exercise of reasonable care for his own safety, then it is the duty of the jury to find the issues for the plaintiff, notwithstanding the negligence of the motorman on said street car, if there was any.

## INSTRUCTION No. 2.

The court further instructs the jury that it was the duty of the driver of the said wagon to keep a lookout for persons and street cars at the time and place in question, and to exercise reasonable care in discovering and avoiding them; and if they believe from the evidence that said driver saw, or by the exercise of reasonable care, could have seen, that there was danger of a collision between his wagon and said street car, and after he saw, or by the exercise of reasonable care should have seen, that there was such danger, he failed to exercise ordinary care to prevent the same, and by reason of said failure on his part the collision occurred and plaintiff's intestate was injured, then you should find for the plaintiff. Thompson on Trials, p. 2669-4197.

## INSTRUCTION No. 3.

The court instructs the jury that a street railway company's right to use that part of the street occupied by its track is paramount to the right of a person driving a vehicle thereon between crossings, and at crossings at the intersection of streets, the rights and duties of such companies and the public are equal. It is the duty of a street car company to exercise ordinary care to seek to avoid injuring others and to warn persons driving vehicles by timely signals of the cars' approach to crossings, and it is likewise the duty of persons driving vehicles to exercise ordinary care in approaching street crossings to avoid exposing themselves or others to injury, and it is the duty of both the street car company and the drivers of vehicles to have them properly equipped with brakes or other necessary appliances, and to maintain them in good condition, and for failure so to do the street car company, or the owner of the vehicles is liable in damages caused thereby. And if the jury believe from the evidence in this case that the city of Richmond failed to keep the brake of its wagon in proper

repair, so that it could have been stopped in time to have avoided the collision with the street car, or that the collision was caused by the negligence of the driver running his wagon at an excessive rate of speed, and that such failure and neglect was the proximate cause of the injury to the decedent, Jones, then they must find for the plaintiff.

## INSTRUCTION No. 4.

The court instructs the jury that if they believe from the evidence that at the time of the collision between the city's wagon and the street car at the intersection of Perry and Fifteenth streets, the deceased, William G. Jones, the conductor, was out on the running board of his car collecting fares as his duty required him to do; that the injury then received by him was the proximate cause of his death; that he had no control over the speed of the said car, and that the collision between the city's wagon and the street car occurred through no fault on his part, then must find for the plaintiff, even though they may further believe that the accident was occasioned by the negligence of both the motorman and the driver of the said city wagon.

## INSTRUCTION No. 5.

The jury is further instructed that if they find damages for the plaintiff in ascertaining such damages, not exceeding $10,000, they should find the same with reference:

1. To the pecuniary losses sustained by the father and mother, and the brothers and sisters of William G. Jones, deceased, fixing the same at such sum as would be equal to the probable earnings of the said William G. Jones, taking into consideration, the age, business capacity, experience, habits, health, energy and perseverance of the deceased, during what would probably have been his lifetime if he had not been killed.

2.   In ascertaining the probability of life, the jury have the right to determine the same with reference to recognized scientific tables relating to the expectation of human life.

3.   By adding thereto compensation for the loss of his care, attention and society to his father and mother and brothers and sisters.

4.   By adding such further sum as they may deem fair and just by way of solace and comfort to said father and mother and brothers and sisters, for the sorrow, suffering and mental anguish occasioned to them by his death.

The following instruction asked for by the defendant was given:

If the jury believe from the evidence that the wagon and team mentioned in the declaration was in a reasonably safe condition and was under the management and control of the administrative board of the city of Richmond, and was being used at the time of the accident complained of in work incident and necessary to the gravelling, grading and improvement of a part of McDonough street in the city of Richmond, from 12th street to 15th street—such as hauling away the dirt that was excavated from the bed of the said street in order to replace same with gravel—then the court tells the jury that the said wagon and team were engaged in the discharge of a governmental or public duty for the benefit of the general public, and that the city of Richmond is not liable for the alleged negligence of the driver of the said wagon and team, or for the injury and death of the plaintiff's decedent which the plaintiff says was caused thereby, and the jury must find the city of Richmond not guilty, even though they may believe from the evidence that the driver of the wagon was guilty of negligence, and that such negligence caused the accident and the injury and death of the decedent, and even though they may believe from the evidence that the accident and the injury and death of the decedent would not have happened but for such negligence of the said driver.

*S. S. P. Patteson* and *Henry Wood,* for the plaintiff in error.

*H. R. Pollard* and *George Wayne Anderson,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by the plaintiff in error to recover of the defandant in error damages for the death of his intestate, which it is alleged was caused by the negligence of the defendant city.

The deceased was a conductor on one of the street cars of the Virginia Railway and Power Company, and was running his car south along Perry street. When he reached the intersection of Perry and Fifteenth streets, his car collided with one of the city wagons, resulting in what, at the time of the accident, appeared to be a slight bruise and abrasion not larger than a five-cent piece on the top of one of his feet. This wound, however, subsequently became serious, and on the 9th day from the date of the injury, the patient died with what is commonly known as lockjaw.

It appears that, through her employees, the city was engaged in regrading and improving McDonough street, one of the old streets in its Manchester addition, which involved the removal of a portion of the surface and hauling this surplus earth to a vacant city lot where it was needed. On the 20th of May, 1913, one of the city wagons, drawn by two mules and driven by an experienced and competent driver, was proceeding with a load of earth from McDonough street to the place of deposit, and in crossing Perry street the collision with the street car occurred. The negligence alleged by the plaintiff is that the wagon was operated with a defective brake, which failed to control it; that the driver drove the wagon at a rapid and excessive rate of speed, so that it could not be properly controlled or stopped; that the driver permitted the reins to

remain slack in his hands and thereby failed to have proper control of his team, etc., and that these negligent acts combined to cause the wagon to run into the street car and so injure the plaintiff's intestate that he died. These allegations of negligence were vigorously denied by the defendant city, and the contention earnestly made that the accident was the result of the negligence of those in charge of the street car, in running the same at an excessive rate of speed, and in failing to keep a lookout, which would have disclosed the approach of the wagon to Perry street in ample time for the car to have come to a full stop and avoided the collision with the city's wagon.

The trial resulted in a verdict for the defendant.

At the request of the city, and over the objection of the plaintiff, the court instructed the jury, in substance, that they must find for the defendant; that the city could not be held liable for the negligence of the wagon driver, because, at the time of the accident, he was engaged in the discharge of a governmental function.

The weight of authority sustains the view that the work which the city was doing in the instant case was not of such a character as to exempt it from liability for the negligent acts of its servants and employees. In grading and improving McDonough street the city was not discharging a governmental function, but was merely performing a ministerial duty which afforded it no immunity from liability for its negligence.

In McQuillin on Municipal Corporations, vol. 6, pp. 5431,-5433, it is said "that a municipality acts ministerially in constructing and repairing public improvements or work, including streets, and hence is liable to persons injured by negligence in the performance of such duties, and this is true notwithstanding the improvements are a public benefit, except, perhaps, where a building is being constructed for public use, such as a courthouse or the like. So it has been held in Missouri, a municipality is liable for the acts of its servant while repairing

streets, in assaulting a traveler in the line of his duty, on the theory that the repair of streets is not a governmental duty."

As to when a municipal corporation is acting ministerially the rule is well stated in Dillon on Municipal Cor. (5th Ed.), vol. 4, secs. 1665, 1741. In note 1 to the last-mentioned section the following statement of the law is italicized: *"A corporation acts judicially in selecting and adopting a plan on which a public work shall be constructed; yet as soon as it begins to carry out that plan, it acts ministerially and is bound to see that it is done in a reasonably safe and skillful manner."*

In *Quill* v. *New York,* 36 App. Div. 476, 55 N. Y. Supp. 889, a city cart removing ashes came into collision with the plaintiff, who sued the city for the damages sustained by her. The defense was made that the city was not liable because it was performing a governmental function. The court held that such work was not governmental. The review of the decisions in the case last cited and the reasoning is convincing.

A recent and well considered case is *Hewitt* v. *Seattle,* 62 Wash. 377, 113 Pac. 1084, 32 L. R. A. (N. S.) 632, which holds that the duty of a city to keep its streets in repair is not a governmental but a ministerial duty, and that the city is liable to a pedestrian negligently run down and injured by its superintendent of streets while driving an automobile in the performance of his duty.

This subject is discussed and authorities cited in the case of *Jones* v. *Williamsburg,* 97 Va. 722, 34 S. E. 883, 47 L. R. A. 294, where Judge Riely, speaking for this court, points out very clearly the distinction between the exercise of those governmental and discretionary functions for which a city is not liable, and the negligent performance of ministerial duties for which it is liable. It is there said: "The defendant was empowered by its charter to lay off streets and walks, and improve the same, but it was wholly within its discretion when and where it would do so. For the omission to exercise the power, it being legislative and discretionary, it would not

be liable for an injury occurring in consequence of the omission, although when the power was exercised, the duty to keep the streets and sidewalks in a reasonably safe condition for travel would become a ministerial and positive duty, for the neglect whereof it would be liable for an injury resulting therefrom. 2 Dillon Mun. Corp. (4th Ed.), secs. 949, 1048."

We are of opinion that in grading and improving McDonough street and hauling the surplus earth therefrom to a place of deposit elsewhere, the city of Richmond was not exercising a governmental function, but was performing a ministerial duty, and that it would be liable for an injury resulting from the negligent performance of such duty. The instruction under consideration was, therefore, erroneous, prejudicial to the rights of the plaintiff, and should not have been given.

The defendant city contends that the injury to the decedent's instep was not the proximate cause of his death; that the assault of the tetanus or lockjaw germ, which was after the injury to the foot, was the intervening and proximate cause of death, for which the city was not liable. This position, under the facts and circumstances of the instant case, cannot be sustained. The evidence shows that the deceased · was attended by a physician on the day of the accident, who regarded the injury as very slight, but dressed the wound, gave the necessary directions as to its treatment, and told the patient to notify him if he needed further attention. On the seventh day thereafter the doctor was sent for and found that the patient had been suffering for a day or two with pain in the back of his neck and stiffness of the jaws. The doctor at once recognized the beginning of lockjaw, and hurried him to a hospital where he died of lockjaw two days thereafter. After he was taken to the hospital he was attended by two physicians, both of whom say that he had a well-defined case of lockjaw, caused by tetanus germs which gained entrance through the wound on his foot; that there was no other wound on his body

through which the infection could have entered; and that there must be a broken surface somewhere in the skin for the bacillus to get into the body.

The record shows beyond dispute that the injury sustained by the plaintiff's intestate resulted from the collision between the street car and the city wagon; and that such injury admitted the germs which produced the lockjaw which caused his death in a few days. In other words, the city's alleged negligent act opened the way for the trouble that did not cease to operate until the fatal result was reached, without any intervening cause whatever, thereby making the injury the proximate cause of the death.

This subject is considered in the case of *Allison* v. *Fredericks-burg,* 112 Va. 243, 71 S. E. 525, which is also reported and fully annotated in 48 L. R. A. (N. S.) 93. The facts of the two cases are wholly different, and there is nothing in the Allison case to sustain the view that the injury in the present case was not the proximate cause of the death of the deceased. In L. R. A. where the case is reported, numerous authorities are cited, among them *Armstrong's Admr.* v. *Montgomery St. Ry. Co.,* 123 Ala. 233, 26 Sou. 349, a very similar case to the present. There the deceased had two fingers fractured and lacerated in a street car accident. In a few days he died from septicemia or blood poisoning. The physician said that septic infection meant poisoning of the system from germs, or products of germs introduced into the blood through wounds. The same contention was made there that is now made in the instant case. In refuting the proposition that the injury sustained by the intestate was not the proximate cause of his death, but that his death was the result of an independent intervening cause, to-wit: the septicemia, or blood poisoning, which set in or began to affect his system several days after the injuries were received, the court said: "It is difficult to conceive how this position can be even plausibly supported. It is clear on the evidence that intestate's death resulted in direct line and

sequence of causation from the injuries he received in the fall
from the car. . . . The fall produced the injuries, the
injuries produced blood poisoning, and the blood poisoning
produced death. There was no break in the chain of causation
from the alleged negligent act to the death of the intestate.
The blood poisoning was not an independent cause. It was not
a superseding cause. It was itself a result, or, perhaps more
accurately, a mere development of the injuries. It is not an
important consideration, even if it be a fact, that blood poison-
ing is not a usual and ordinary result or development of wounds
of the character inflicted upon the intestate. . . . The
logical rule in this connection, the rule of common sense and
human experience as well, is that a person guilty of negligence
should be held responsible for all the consequences which a
prudent and experienced man, fully acquainted with all the
circumstances which in fact existed, whether they could have
been ascertained by reasonable diligence or not, would, at the
time of the negligent act, have thought reasonably possible to
follow, if they had occurred to his mind. 1 Shear. & Red. on
Neg., sec. 29."

The case cited is high and very pertinent authority, for
there can be no valid distinction, so far as the proximate cause
of death is concerned, between wounds admitting germs pro-
ducing blood poisoning which results in death, and wounds
admitting germs producing lockjaw which results in death.
In either case there is a reasonable possibility of the fatal
trouble being developed in consequence of the wound.

The only remaining objection made in the petition for a
writ of error is to the action of the court in refusing five
instructions asked for by the plaintiff.

We are of opinion that instruction No. 1, asked for by the
plaintiff, was defective in several particulars, and was, there-
fore, properly refused. This instruction is very confusing and
misleading. It tells the jury that if the driver of the city
wagon was guilty of negligence in manner and form as alleged

in the declaration, or some count thereof, etc., they should find for the plaintiff; thus devolving upon the jury the task of evolving from a long declaration containing several counts pertinent matter upon which to rest their verdict. We are of opinion that instruction No. 1 asked for by the plaintiff was properly refused. It is very confusing and misleading and is further erroneous in that it concludes with a direction to the jury to find for the plaintiff, when it does not contain a complete statement of all facts necessary to a recovery.

We are further of opinion that instruction No. 3, asked for by the plaintiff was erroneous and properly refused. This instruction is subject to the same objection as No. 1, in that it concludes with a direction to the jury to find for the plaintiff, without containing a complete statement of the facts necessary to a recovery. It is further defective in telling the jury that at crossings at the intersection of streets, the rights and duties of such companies and the public are equal, whereas the traffic ordinance of the city of Richmond expressly provides that "all vehicles and street cars going in an easterly direction or westerly direction shall have the right of way over all vehicles or street cars going in a northerly or southerly direction." The testimony is undisputed that the street car was going south and the wagon going east, which, under the ordinance, gave the wagon the right of way at the time of the collision.

We are further of opinion that it was error to refuse instructions Nos. 2, 4 and 5, asked for by the plaintiff. These instructions are in the usual form in cases of like character, and do not appear to be prejudicial to the defendant.

The defendant in error insists that from the record, taken as a whole, it appears that under correct instructions a different verdict could not have been rightly found, and, therefore, that the judgment complained of should be affirmed. Without comment upon the evidence or expressing any opinion upon the merits of the case, it must suffice to say that under the facts and circumstances shown of record we would not feel

warranted, under our practice, in denying the plaintiff the right to have his case submitted to a jury under proper instructions.

For the errors pointed out in the instructions, the judgment complained of must be reversed, the verdict of the jury set aside, and a new trial granted not in conflict with the views expressed in this opinion.

*Reversed.*