# Richmond.

## Seaboard Air Line Railway Company v. Helen Terrell.

### January 19, 1928.

### Absent, Burks, J.

1. Crossings—*Negligence of Railroad—Excessive Speed and Failure to Lower Gates Alleged as Negligence—Appeal and Error—Assignments of Error Considered—Harmless Error—Case at Bar.*—In the instant case, an action for injuries to plaintiff received in a collision at a railroad crossing, plaintiff alleged two grounds of negligence: First, the failure of the railroad to lower the crossing gates as required by ordinance; and second, the operation of the train at a speed in excess of that allowed by an ordinance of the city. Defendant contended that the ordinance in question regulating the speed of trains was not intended to regulate the speed at street crossings but to deal with the running of trains in or along a street of the city, and that if it was intended to limit the speed of trains at street crossings the ordinance would be unreasonable.

   *Held:* That it was not necessary to pass upon these questions as to the ordinance regulating the speed of the train in the instant case for the reason that the failure to lower the gates as required by ordinance was negligence and the proximate cause of the injury, expecially as the verdict of the jury on conflicting evidence absolved the plaintiff from fault and the driver of the automobile from negligence which was the proximate cause of the accident. Therefore, error in the admission of evidence or in the instructions in regard to the speed of the train would be, if error at all, harmless error.

2. Questions of Law and Fact—*Negligence—No Conflict in the Evidence— Railroad's Negligence in Failing to Lower Gates at Crossing—Case at Bar.*—In the instant case, an action against a railroad company for injuries received in an accident at a crossing, plaintiff alleged negligence of the railroad company in failing to lower the crossing gates as required by an ordinance of the city in which the accident occurred. There was no conflict in the evidence as to the negligence of the defendant company in failing to lower the gates.

   *Held:* That the question of defendant's negligence was for the court and not for the jury.

3. Crossings—*Negligence—Failure to Lower Gates—Proximate Cause—Case at Bar.*—In the instant case, an action against a railroad for injuries received by plaintiff when the automobile in which she was riding collided with an engine of defendant at a railroad crossing, it was undisputed that the gates were not lowered until after the collision between the engine and the automobile.

*Held:* That as a matter of law the defendant was negligent and the evidence clearly established that the act of negligence was the proximate cause of the accident.

4. Crossings—*Collision with Automobile—Contributory Negligence of Plaintiff—Question for Jury—Case at Bar.*—In the instant case plaintiff was riding in an automobile at the invitation of the driver when the automobile was struck at a street crossing by an engine of defendant railroad and plaintiff injured. Upon conflicting evidence and under proper instructions by the court plaintiff was absolved from contributory negligence by the verdict of the jury in her favor.

5. Automobiles—*Injury to Passenger—Contributory Negligence of Driver Question for Jury—Case at Bar.*—In the instant case plaintiff, while riding in an automobile at the invitation of the driver, was injured by a collision at a street crossing with an engine of defendant. The jury were instructed that if the driver was guilty of negligence and his negligence was the sole proximate cause of the injury, plaintiff could not recover.

*Held:* That the verdict of the jury for plaintiff resolved the question of the driver's contributory negligence being the sole proximate cause of the injury in plaintiff's favor, and that the question was properly for the jury.

6. Automobiles—*Injury to Passenger—Passenger Observing that Driver was Reckless or Intoxicated—Case at Bar.*—In the instant case the court instructed the jury that if plaintiff, a passenger in an automobile at the invitation of the driver, had an opportunity to observe the driver and perceived that he was reckless or intoxicated or not in a fit condition to drive the car and continued to ride with him, this was negligence on her part and would bar her recovery if the driver was negligent and his negligence caused or contributed to the accident.

*Held:* That there was no error in the instruction and that the question was for the jury.

7. Automobiles—*Injury to Passenger—Car Driven at Excessive Rate of Speed—Case at Bar.*—In the instant case the court instructed the jury that if plaintiff, a passenger in an automobile at the invitation of the driver, knew and acquiesced in the car being driven at a rate of speed in excess of that permitted by ordinance and this negligence caused or contributed to the accident, plaintiff could not recover.

*Held:* That there was no error in the instruction and that the question was for the jury.

8. Automobiles—*Injury to Passenger—Intoxication—Case at Bar.*—In the instant case the court instructed the jury that if plaintiff, a passenger in an automobile at the invitation of the driver, and other occupants of the car were intoxicated and by reason of intoxication failed to exercise ordinary care and this lack of care caused or contributed to the accident by which plaintiff received her injury, plaintiff could not recover.

*Held:* That there was no error in the instruction and that the question was for the jury.

9. Automobiles—*Injury to Passenger—Imputable Negligence—Case at Bar.*—In the instant case, an action by plaintiff who, while riding in an automobile at the invitation of the driver was injured by a collision with defendant's engine at a street crossing, the court instructed the jury that the question as to whether, if the driver was guilty of contributory negligence, such negligence should be imputed to the plaintiff, was for the jury to determine. That is left to the jury the question as to whether the plaintiff exercised any control over the driver or whether they were engaged in a joint enterprise, in either of which events negligence of the driver would be imputed to the plaintiff, or whether plaintiff was a guest of the driver, in which event negligence of the driver would not be imputed to the plaintiff.

*Held:* That the questions were properly submitted to the jury and there was no error in the instruction.

10. Crossings—*Automobile Approaching—Duty of Driver or Occupant—Instructions—Harmless Error—Case at Bar.*—The instant case arose out of injuries to plaintiff when engine of defendant collided with automobile, in which plaintiff was a guest, at a street crossing. It was admitted that the gate was not lowered at the crossing at the time of the accident. Instruction number 13 told the jury that a traveler approaching a grade crossing where gates are in use must use that degree of care which a person of ordinary prudence would use under like circumstances before going on the track. Instruction 13a told the jury that if defendant failed to lower the gates as required by ordinance such failure might be taken by the driver of an automobile as a notice that it was safe to proceed across the tracks, as the driver had a right to presume that the defendant would obey the ordinance, and instruction 14 told the jury that the driver of the automobile, notwithstanding the failure of defendant to lower the gates at the crossing, had the same duty to look and listen as set forth in instruction 13 and if he failed to use the precaution of a person of ordinary prudence and care he was guilty of negligence and plaintiff could not recover, if such negligence could be imputed to plaintiff.

    *Held:* That instructions 13 and 14 correctly stated the law and instruction 13a should not have been given as at least it added nothing to instructions 13 and 14 and tended to confusion and conflict, but if error it was harmless error.

11.  Automobiles—*Crossings—Open Gates—Imputable Negligence—Driver of Automobile and His Guests—Case at Bar.*—If the driver of an automobile was negligent in taking the fact that the gates at a crossing were not lowered as notice that it was safe to proceed, or in presuming that defendant railroad would obey the ordinance, this negligence could not be imputed to his guests, which the jury found his companions to be, and at most his negligence in this respect but combined with the established negligence of the defendant to bring about the accident and the resultant injury to the plaintiff. In such a case the defendant and the driver were joint tort feasors, and at the suit of the plaintiff the defendant is responsible.

12.  Automobiles—*Crossings—Gates not Lowered—Negligence—Proximate Cause—Admission of Evidence and Instructions—Harmless Error—Case at Bar.*—In the instant case, an action by plaintiff against a railroad for injuries received in a collision at a street crossing, it was established that defendant was guilty of negligence in not lowering the gates at the crossing. In view of the evidence and the verdict of the jury it was established that this act of negligence was the proximate cause of the accident. The driver of the automobile and several of his guests testified that they knew that the gates were there, that it was the custom of the company to lower them when trains came along and that they were not lowered and that the driver stopped and looked and when he started forward the gates were still open.

    *Held:* That the railroad company was guilty of negligence as a matter of law in not lowering the crossing gates upon the approach of a train and that the admission of evidence with reference to any other alleged charge of negligence or instructions to the jury as to such charge of negligence whether erroneous or not constituted harmless error.

Error to a judgment of the Law and Equity Court of the city of Richmond, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Hunton, Williams, Anderson & Gay, Whiting C. Faulkner* and *Edmund M. Preston,* for the plaintiff in error.

*Smith & Gordon* and *Chas. W. Crowder*, for the defendant in error.

Chichester, J., delivered the opinion of the court.

This is an action by Helen Terrell, hereinafter referred to as plaintiff, against the Seaboard Air Line Railway Company, hereinafter referred to as railway company, or defendant railway company, in which the plaintiff recovered a judgment of $4,500.00 against the railway company, for personal injury.

The accident, which resulted in the injury complained of, occurred about one o'clock in the morning of the 21st of January, 1924, at a point within the city of Richmond where the tracks of the defendant railway company cross the Hermitage road. At this point the Hermitage road runs practically north and south and the railroad generally, east and west. The Hermitage road approaches the railroad at a slight angle. On the left going south, or the eastern side of the Hermitage road, a short distance from the railroad track, there is a building which obstructs the view of the trains approaching from the east until the building is passed. The railroad is up grade from the Brown street yard of the defendant railway company to the Hermitage crossing.

On the night of January 20, 1924, Eddie Carter (colored), who was employed as a chauffeur for M. M. Madden, a negro evangelist, drove Madden to his home in Richmond, arriving there about 11:30 P. M., but instead of taking the car to the garage as directed by Madden, Carter drove to the home of the plaintiff, Helen Terrell, on west Clay street. There he met the plaintiff, James Huling and Walker Twine, whom he invited, after he had remained at the house a short

time, to take a drive with him in Madden's automobile. Leaving Helen Terrell's home shortly after twelve o'clock with Eddie Carter driving, they proceeded up Clay street to Bowe street and then into Broad street, up Broad street to the Boulevard, thence north on the Boulevard to its intersection with Hermitage road at the fair grounds, then back on the Hermitage road to the tracks of the railway company where the accident occurred.

The automobile in which the plaintiff and her companions were riding was a Cadillac sedan. The night was cold and the windows of the car were closed; there was a bright arc light at the crossing which was burning on the night of the accident. The occupants of the car testify that they approached the crossing at a moderate rate of speed, not more than eighteen to twenty miles per hour, and that when close to the tracks of the railway company the driver slowed down and then brought the car to a complete stop about two lengths from the railroad tracks, before he proceeded to cross. The driver and at least one of his companions testified that they looked east and west along the track of the railway company before going upon it and could not see a train approaching from either direction. They all testified that the gates, which the railway company had erected at this crossing, were not lowered, and that when they ascertained this they drove upon the railway tracks where they were run into by the engine of the defendant company as it came upon the crossing from the east.

It is a fact that the gates were not lowered when the accident occurred. This was conceded in the argument of the case and the record clearly and uncontradictedly shows it. The watchman admitted that he lowered the gates after the collision, and they were down when the train was stopped and the crew arrived at the scene of the accident.

The defendant's train, consisting of eighteen freight cars, mostly loaded, left Brown street yard in Richmond at 12:30 A. M., on the morning of the 21st of January, 1924, and was going west, as conclusively shown by the evidence, at a speed of from eight to ten miles an hour when the accident occurred.

The bell which was automatic in action was ringing from the time the train left Brown street yard until after the accident when the automatic control was cut off, and the whistle was blown just before the train reached Hermitage crossing. The engineer testified that he maintained a sharp lookout from the front window of his cab; that his view of the Hermitage road was cut off until he had passed the building above referred to as being on the east side of that road, and that the automobile, which he alleges was going at a high rate of speed, ran into the engine and struck the right pilot beam thereof as he was crossing the road. He immediately applied his brakes and brought his train to a stop within about 160 feet.

The evidence as to the condition of the occupants of the automobile at the time of the accident is conflicting. They testify that they had not been drinking, and a number of other witnesses who helped to extricate them from the wreck testified that they did not smell whiskey on their breath, but there were a number of witnesses, including doctors at the hospital where they were carried, who testified that alcohol or whiskey was strong upon their breath. There was some testimony to the effect that Huling admitted they left Richmond in search of whiskey, that they purchased a quart and drank it all before reaching Hermitage road.

The distance from the Brown street yard of the railway company to the Hermitage road crossing, where

the accident occurred, is about two miles and a quarter. The train left the Brown street yard at 12:30 A. M., and arrived at the Hermitage crossing at 12:45 A. M., or fifteen minutes later. It was conceded that the train was exceeding four miles per hour at the crossing.

This is a fair summary of all the evidence, and upon this evidence, after having been given sixteen instructions by the court, the jury found the verdict complained of and the court rendered judgment thereon.

The plaintiff alleges two grounds of negligence:

First:   Negligence of the railway company in failing to lower the crossing gates as required by an ordinance of the city of Richmond.   (Marginal note I.)

Second:   Negligence of the railway company in operating its train at a speed in excess of four miles an hour, in violation of an ordinance of the city of Richmond.   (Marginal note II.)

In meeting the second charge of negligence, the defendant railway company, while admitting non-compliance with the ordinance, if its purpose was to regulate the speed of trains at street crossings, defended upon the ground that the ordinance was designed to deal with the running of trains in or along a street of the city of Richmond, and not with running trains across streets.   The defendant's train was not running along a street, but was running upon its own right of way, and the accident occurred on a street crossing.

The defendant railway also contended that if the

I. It shall be the duty of said railroad companies, or any corporation, receivers, or individuals operating the same, to erect and maintain said gates, and to provide for the closing of the same at the approach of engines or trains so as to prevent accidents, and to have same immediately opened when the engine or train has passed.

II. "If any engine or other vehicle be drawn or propelled upon a railroad or rail-track in a street at a greater rate than four (4) miles an hour, the person who does it or causes it to be done, or assists in doing it, or causing it to be done, shall pay a fine of $10.00."

ordinance was intended to limit the speed of trains at street crossings to four miles per hour, as applied to Hermitage road crossing, where the accident occurred, the ordinance is unreasonable, and is for that reason void.

The defendant company objected to the introduction of the speed limitation ordinance in evidence, for the reasons just stated, to the giving of instruction No. 2 (marginal note III) so far as it related to the speed ordinance, for the same reasons, and to the refusal of the court to give instructions tendered by defendant, numbered E and F (marginal note IV).

The adverse action of the court, upon these several propositions, is assigned as error. The solution of the questions involved would require a construction of the ordinance in its application to the speed of trains within the city limits of Richmond, and if it was designed to regulate the speed of trains everywhere in the city, as contended by the plaintiff, determination of the question of its reasonableness with reference to the Hermitage road crossing.

[1, 2] In the view we take of the instant case it is not necessary to pass upon the questions raised by this assignment of error for the reason that the failure of the railway company's agent, the watchman at the

III. The court instructs the jury that the ordinances of the city of Richmond introduced in evidence in force at the time of the accident required the defendant:

1. To limit the rate of speed of its engines and trains to four (4) miles per hour;

IV. E. The court instructs the jury that the ordinance of the city of Richmond prohibiting the movement of an engine in a street at a greater rate of speed than four miles an hour has no application to the facts in this case, and you should, therefore, disregard the same.

F. The court instructs the jury that the ordinance of the city of Richmond prohibiting the movement of an engine in a street at a greater rate of speed than four miles an hour, in so far as it applies to the Hermitage road crossing of the defendant company, is unreasonable, and, therefore, as to such crossing void and of no effect, and should be disregarded by you.

Hermitage road crossing to lower the gates as required by the ordinance of the city of Richmond (marginal note I) upon the approach of its train, was negligence, and as shown by the evidence was the proximate cause of the accident especially as the verdict of the jury, upon a conflict of the evidence and proper instructions, absolves the plaintiff from fault and the driver from negligence which was the proximate cause of the accident, as will later appear.

If this is true, that is, if it is true that there is no conflict in the evidence as to the negligence of the defendant company in failing to lower the gates, this question of negligence becomes a question for the court and not one for the jury (*Winchester* v. *Carroll,* 99 Va. 744, 40 S. E. 37; *Appalachian Power Co.* v. *Robertson,* 142 Va. 468, 129 S. E. 224), and if this negligence was the proximate cause of the accident, and the plaintiff was without fault, then it makes no difference whether there was other negligence on the part of the defendant or not, and any consideration thereof, or instructions thereupon, would be, if error at all, harmless error. Let us see if this is not true as to the failure to lower the gates being negligence as a matter of law, and the proximate cause of the injury, under the circumstances of this particular case.

The defendant meets the charge of negligence on account of the failure to lower the gates with the following defenses:

1. That it was not guilty of any negligence, and if it was, such negligence was not the cause of the accident.

2. That the proximate cause of the injury was the negligence of the plaintiff or the driver of the automobile.

3. That if the defendant was guilty of negligence the plaintiff was guilty of contributory negligence.

I. See page 351.

12

4. That the negligence of the driver of the automobile in which the plaintiff was riding when struck is imputed to the plaintiff.

These several grounds of defense are so interlocked that we may discuss them together, referring to one or the other as occasion may require.

[3] So far as the alleged negligence of the defendant is concerned in not lowering the gates there is no conflict of evidence. In fact it was admitted in the argument, and it is undisputed in the evidence, that the gates were not lowered until after the collision between the engine and the automobile. As a matter of law then, the defendant was negligent in the performance of this duty, and the evidence in the case clearly establishes this act of negligence as the proximate cause of the accident.

The specific evidence supporting the assertion that the failure to lower the gates was the proximate cause of the accident will be discussed later.

[4–9] Other causes arising from alleged fault of the plaintiff or the plaintiff and her companions have been eliminated by the jury's verdict, except possibly contributory negligence on the part of the driver, Carter, upon a conflict of evidence and under proper instructions by the court, instructions to which no exception was taken. Thus the jury was told that if the plaintiff was negligent and her negligence contributed to the accident, she could not recover. They were told that if the driver was guilty of negligence and his negligence was the sole proximate cause of the injury, the plaintiff could not recover. They were told that if the plaintiff had an opportunity to observe the driver and that he was reckless or intoxicated or not in a fit condition to drive the car and she continued to ride with him then this was negligence on her part

and would bar her recovery if the driver was negligent and his negligence caused or contributed to the accident. They were told that if the automobile was being driven at a rate of speed in excess of that permitted by the ordinance of the city of Richmond, with the knowledge and acquiescense of the plaintiff, and this negligence caused or contributed to the accident, the plaintiff could not recover. They were told that if the plaintiff and other occupants of the car were intoxicated and by reason of intoxication failed to exercise ordinary care and that this lack of care caused or contributed to the accident the plaintiff could not recover. Instruction No. 14 left to the jury the question as to whether, if Eddie Carter, the driver, was guilty of contributory negligence, such negligence should be imputed to the plaintiff. That is, it left the question as to whether the plaintiff exercised any control over the driver or whether they were engaged in a joint enterprise, in either of which events negligence of the driver would be imputed to the plaintiff (*W. O. & D. R. v. Zell's Adm'r*, 118 Va. 755, 88 S. E. 309), or whether the occupants of the car, including the plaintiff, were guests of the driver, in which event negligence of the driver would not be imputed to the plaintiff. *N. & W. Ry. Co. v. James*, 147 Va. at page 187, and authorities cited at page 188, 136 S. E. 660, 664.

All these were jury questions and the instructions submitting them to the jury correctly propounded the law. They were all answered by the jury's verdict in favor of the plaintiff's contention and against the contention of the defendant railway company.

[10, 11] Indeed there was objection and exception to only one instruction given by the court. The court

gave instructions 13, 13a and 14 (marginal note No. V). No objection is made to 13 and 14 but it is contended that 13a does not correctly propound the law and that it is in conflict with instruction 13. It is conceded that instruction 13 properly propounds the law with reference to the duty of the driver of an automobile when approaching a grade crossing of a railroad where gates are in use.

It is quite clear, we think, that instruction 13a should not have been given. In view of the other instructions given it was probably not reversible error to give it, but instructions 13 and 14 correctly propounded the law and were sufficient. To add anything to them, at least tended to confusion and conflict, but even if it was error to give instruction 13a, an examination of the instruction discloses that it deals with the question of presumption which a driver of an automo-

V. 13. The court instructs the jury that a traveler, either a driver of an automobile or an occupant thereof, when approaching a grade crossing of a railroad where gates are in use, must use that degree of care which a person of ordinary prudence would use under like circumstances before going on the track. While the same degree of care is not required as at a crossing where no such devices are used, still he must use such reasonable care as an ordinarily prudent person would exercise under like circumstances to ascertain whether or not a train is approaching. They cannot rely entirely on an open gate as a guarantee of safety.

13a. The court instructs the jury that if they believe from the evidence that the defendant failed to lower the gates, as required by the ordinances in evidence, then such failure may be taken by the driver of an automobile as a notice that it was safe to proceed across the tracks of the defendant, as the driver had a right to presume that the defendant would obey the said ordinances.

14. The court instructs the jury that the same duty to look and listen devolved upon Eddie Carter, the driver of the automobile, as set forth in Instruction No. 13, notwithstanding the failure of the defendant to lower the gates at the crossing; and if you believe from the evidence that the said Eddie Carter failed to use the precaution of a person of ordinary prudence and care in looking out for and listening for the approach of the train, as set forth in instruction No. 13, then the said Eddie Carter was guilty of negligence; and if you further believe from the evidence that the negligence of the said Eddie Carter is imputed to the plaintiffs in this case, as set forth in other instructions of this court, then such negligence on the part of Eddie Carter, the driver of the automobile, is imputed to the plaintiffs in this case.

bile may entertain as to what the position of the gates may mean. The instruction says the failure to lower the gates may be taken by the *driver* as notice that it was safe to proceed, and that the driver had a right to presume that the defendant would obey the ordinance. If the driver was negligent in taking the fact that the gates were not lowered as notice that it was safe to proceed or in presuming that the defendant would obey the ordinance, this negligence could not be imputed to his guests, which the jury found his companions to be, and at most his negligence in this respect but combined with the established negligence of the defendant to bring about the accident and the resultant injury to the plaintiff. In such a case the defendant and the driver were joint tort feasors, and at the suit of the plaintiff the defendant is responsible. It follows that if it was error to give instruction 13a, it was harmless error, so far as the plaintiff's rights are involved.

[12] We have then the legally established fact that the defendant was guilty of negligence in not lowering the gates. That this act of negligence was the proximate cause of the accident, in view of the evidence, and in view of the verdict of the jury, there can be no doubt. Eddie Carter testified that he knew the gates were there; that he knew it was the custom of the company to lower them when trains came along; that they were not lowered when he approached the track; that he stopped and looked and started up and they were still up and he would not have gone forward if they had not been up.

James Huling testified to the same effect. Twine testified to the same effect, and the plaintiff said she was noticing the gates especially, looking for them when they first slowed down, and saw that they were up, "that is why we thought we could go by." It is

clear from all the testimony of the occupants of the car that they were looking at the gates and that they undertook to cross the railroad tracks because the gates were up, and it follows that the fact that they were not lowered was the cause of, or a cause contributing to, the accident. It is also clear that if there had been no evidence of negligence on the part of the driver, Carter, or contributory negligence on the part of the plaintiff, under the circumstances above narrated if the jury had found a verdict for the defendant it would have been the duty of the trial court to have set it aside as being without evidence to support it, or as against the evidence and to have awarded the plaintiff a new trial.

It is a noticeable fact, with reference to the speed of the train, that the plaintiff did not rely upon this charge of negligence for recovery, as neither the plaintiff, the driver of the automobile or any of the occupants thereof testified as to the speed of the train or made any complaint about excessive speed thereof. On the contrary they all complained of the failure to lower the gates, and attributed the accident entirely to this.

From all the foregoing it appears, without conflict in the evidence, that the railway company was guilty of negligence as a matter of law in not lowering the crossing gates upon the approach of the train; that the admission of evidence with reference to any other alleged charge of negligence or instructions to the jury as to other alleged charges of negligence whether erroneous or not constituted harmless error; that there is ample evidence to support the charge that the failure to lower the crossing gates was the proximate cause of the accident; that there is no evidence to support the allegation that the speed of the train was the cause of the accident or had anything to do with it; that the

jury by its verdict, upon a conflict of the evidence, and upon proper instruction, has eliminated the charge that the negligence of the driver of the automobile was the sole proximate cause of the accident or that the plaintiff's negligence was the cause of the accident; that the jury has, by its verdict, under proper instructions, found that the plaintiff and the other occupants of the automobile were guests of Carter, the driver, and not engaged in a joint enterprise with him, and it follows that his contributory negligence if he was guilty of any, could not be imputed to them; and that the plaintiff and the other guests of the driver were not themselves guilty of contributory negligence.   We conclude, therefore, that there is no harmful error affecting the plaintiff's right to recover and that the judgment of the trial court should be affirmed.

*Affirmed.*