# Richmond.

## The Chesapeake and Ohio Railway Company v. Helen May Meyer, Administratrix of the Estate of George Edgar Meyer, Deceased.

### May 24, 1928.

1. Crossings—*Negligence of Railroad—Exceeding Speed Limit Established by Ordinance—Case at Bar.*—In the instant case plaintiff's decedent was killed by defendant's train at a street crossing in a town. An ordinance of the town provided that no engine or other vehicle should proceed across a street at a greater rate of speed than fifteen miles an hour, and that while any locomotive or train should be passing along or across any street, the bell on such locomotive should be kept constantly ringing, and provided for a fine for violation of the ordinance.

   *Held:* That this was a reasonable ordinance and if it was violated by defendant railroad in the instant case, then defendant was negligent.

2. Crossings—*Action for Death at Crossing—Appeal and Error—Conflicting Evidence.*—In an action against a railroad for the death of a passenger in an automobile at a street crossing, there was a verdict for plaintiff confirmed by the trial judge. The case, therefore, was before the Special Court of Appeals as on a demurrer to the evidence, and conflicts in the evidence must be resolved in favor of the plaintiff.

3. Crossings—*Automobile Accident at Crossing—Train Exceeding Speed Limit Established by Town Ordinance—Evidence—Case at Bar.*—In the instant case, an action for the death of plaintiff's decedent in an automobile accident at a street crossing in a town, an ordinance of the town provided that trains or other vehicles should not proceed across a street crossing at a speed in excess of fifteen miles per hour. A witness testified that the train in question was running at least between twenty and twenty-five miles an hour. The rate of speed at which the automobile was proceeding, and the time which it took to stop the train after the automobile was first seen by the lookout, corroborated this witness.

   *Held:* That there was sufficient evidence to sustain the verdict of the jury that the train was traveling more than fifteen miles an hour and that in so doing the railway was negligent.

4. Crossings—*Exceeding Speed Limit—Presumption of Continuity of Speed—*

*Case at Bar.*—In the instant case, arising out of an accident at a street crossing, a witness testified that the train was exceeding the speed limit just before it reached the crossing.

*Held:* That the presumption of continuity of speed obtained, and moreover nothing was done to check this speed until the engine was within twenty-five feet from the point of accident.

5. CROSSINGS—*Automobile Accident at Crossing—Train Exceeding Speed Limit Established by Town Ordinance—Proximate Cause—Causal Connection between Excessive Speed and the Accident—Case at Bar.*—In the instant case plaintiff's decedent was killed by defendant's train at a street crossing in a town having an ordinance providing that trains should not proceed across street crossings at a greater speed than fifteen miles an hour. The evidence established the fact that at the time of the accident the train was exceeding the speed limit. The rear of the automobile was barely touched, and delay of a fraction of a second would have permitted it to pass in safety.

*Held:* That not only was the defendant negligent but its negligence immediately contributed to the accident, but for it there would never have been a collision. The excessive speed was not the sole proximate cause, but it was a proximate cause.

6. CROSSINGS—*Automobile Accident—Contributory Negligence of Passenger in Automobile—Case at Bar.*—The instant case was an action for death of plaintiff's decedent in a collision between an automobile and a train at a street crossing. In the absence of evidence it should be assumed that plaintiff's dedecent did what he ought to have done at the time of the accident, that is, that he was on the lookout and saw the approaching train. He had a right to assume that the driver had done the same, for he must have known that she had shifted the gear and had cut down the speed of her car until it was under complete control. An automobile traveling as the car in the instant case could have been stopped almost instantly, and plaintiff's decedent was justified in believing that it would be stopped in ample time. Moreover, when the car came within twenty-five feet of the track, and when there was no additional indication of any intention on the part of the driver to stop the car, plaintiff's decedent became alarmed and tried to get out of the car and was killed in the attempt. He may have protested to the driver.

*Held:* That the conduct of decedent did not differ from that of an ordinarily prudent man, and he was not guilty of contributory negligence.

7. AUTOMOBILES—*Vigilance of Passenger—Contributory Negligence of Passenger in Automobile.*—A passenger in an automobile cannot blindly trust to his driver, but in the nature of things one on the back seat is not required to exercise that degree of vigilance which is demanded of the chauffeur.

8. Automobiles—*Imputable Negligence—Driver and Guest or Passenger.*—The negligence of the driver of an automobile cannot be imputed to a guest or a passenger in a private car.

9. Automobiles—*Passenger—Contributory Negligence of Passenger—Case at Bar.*—In the instant case plaintiff's decedent was killed in a collision at a street crossing between the automobile in which he was riding as a passenger and defendant's railroad train.  Plaintiff's decedent could not be charged, as a matter of law, with primary nor imputed negligence.  But it was urged that as a matter of fact the evidence showed that he was guilty of contributory negligence; that after the peril was actually known decedent had a clear chance to escape, and that there were intoxicants in the car.  These issues were preeminently for the jury.  About them reasonable men might have differed and so if the jury was properly instructed, the appellate court was precluded by its verdict in favor of plaintiff.

10. Negligence—*Instructions—Reference to the Negligence Charged in the Declaration or Motion.*—Generally an instruction in an action for personal injuries that if the jury believed from a preponderance of the evidence that the defendant was guilty of "negligence charged in the notice of motion for judgment," and such negligence was the proximate cause of the injury, they should find for plaintiff, is erroneous as turning the jury loose to find the defendant guilty of any negligence which might be based upon a breach of any of the duties charged in the declaration.

11. Negligence—*Instructions—Reference to the Negligence Charged in the Declaration or Motion—Not Always Reversible Error.*—A reference to "the negligence charged in the declaration" in an instruction is not always to be construed as reversible error.  Sometimes a declaration is very brief and simple, and every case in this respect must depend upon its own facts.

12. Negligence—*Instructions—Reference to the Negligence Charged in the Declaration or Motion—Not Always Reversible Error—Case at Bar.*—In the instant case, an action against a railroad for the death of plaintiff's decedent in a collision between its train and the automobile in which decedent was riding at a street crossing, the motion for judgment was "very brief and simple."  It was manifest at the conclusion of the evidence that counsel for plaintiff relied solely upon the charge of negligence based on the excessive speed of the train.  Therefore, the jury could not have been mislead by an instruction that they should find for the plaintiff if "defendant was guilty of negligence charged in the notice of motion for judgment,"¹ and it did not constitute reversible error.

13. Instructions—*Instruction not Supported by the Evidence.*—It is not error to refuse an instruction where there is no evidence to support it.

14. CROSSINGS—*Automobiles—Care to be Exercised by Driver and Passenger—Instructions.*—Upon the approach of a crossing both the driver and the passenger must exercise ordinary care to avoid an.accident, but that degree of vigiliance required is not the same in each instance. The passenger does, and must of necessity, in a large measure rely upon the driver. What is ordinary care in one set of circumstances may be negligence in another. An offered instruction which does not make this distinction between the care required of a driver and the care required of a passenger is properly rejected.

15. INSTRUCTIONS—*Repetition.*—It is not error to refuse a proper instruction where the rule of law embraced in the instruction has already been given by the court in another instruction. Having once stated the rule, it was not necessary that it should be repeated.

16. EXPERT AND OPINION EVIDENCE—*Qualifications of Railroad Engineer—Case at Bar.*—In the instant case, an action for injuries arising out of a collision of a railroad train with an automobile, it was objected to the testimony of a witness that he was not qualified to testify as an expert. The witness was an engineer of nine years' experience and had been a fireman on a passenger engine for ten years. He was familiar with the type of engine which did the damage. His experience as a passenger engineer was quite limited, but he had operated engines in yard movements and as fireman for a number of years he had had the opportunity of observing the braking of trains in passenger service.

    *Held:* That it is not necessary that such witness be "highly" qualified, and that this witness was qualified.

17. EXPERT AND OPINION EVIDENCE—*Discretion of Court.*—The admissibility of expert evidence is largely a matter in the discretion of the trial court, and its ruling allowing a witness to so testify will not be reversed unless it clearly appears that he was not qualified.

The opinion states the case.

*Leake & Spicer*, for the plaintiff in error.

*Sinnott, May & Leaman*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

Error to a judgment of the Law and Equity Court of the city of Richmond, Part II, in an action by motion for judgment for money. Judgment for plaintiff. Defendant assigns error.

Designating the parties as they were designated in the trial court, plaintiff's decedent was killed in a crossing accident on April 15, 1925, in the town of Mineral. An action by motion for the recovery of damages was instituted by the administratrix. In due time it came on for trial. The jury returned a verdict in the sum of $8,600.00, which verdict was confirmed by a judgment of the trial court. To it appropriate exception was taken. In addition there are a number of other assignments of error. For convenience and to save repetition they have been consolidated by the defendant in this manner:

"I. Defendant was not negligent.

"II. Even if defendant were negligent, such negligence was not a proximate cause of the accident, but the intervening, independent act of the driver of the automobile was the sole proximate cause of the accident.

"III. Plaintiff's decedent was guilty of contributory negligence as a matter of law.

"IV. Errors as to instructions.

"V. Error in admission and refusal to strike out testimony of witness, Paul Copley."

Decedent was a traveling salesman. On the day of his death, when he reached Mapes' store, about four miles west of Mineral, his car was out of order and he asked Mapes if he would not send him on to the hotel at that town. This Mapes, as an accommodation, undertook to do and sent him on in an open car with Mrs. Mapes as driver. By her sat Linwood Baker, a boy about fourteen years old. Meyer sat on the back seat. They came down the Jefferson Highway and turned to the left into First street which crossed the defendant's right of way at right angles. A map showing the situs of the accident and its environments drawn to scale has been introduced by the plaintiff.

and for convenience it is made a part of the opinion. This scale originally was twenty feet to the inch, but that attached to the record is a reduced photostatic copy whose actual scale is somewhere between forty and forty-five feet to the inch. It is on this basis that statements of distances in this opinion are founded.

For reasons which will hereafter appear these measured distances are not matters of first importance, in the main they have to do with the negligence of the driver which for the purposes of this litigation may readily be conceded.

The distance from the highway to the railway was a little less than 200 feet. At the point of turning, the view to the east, from which the train came, was shut off by Graves Hardware store, the Turner building and Slachter's warehouse. In approaching the railroad, this view continued to be obstructed by the Graves building until the automobile was about 100 feet from the track. There was then a space of about ten or twelve feet between this warehouse and the section house in which the track could be seen. The section house then intervened and cut off all but eighty feet of track and the widening angle of approach correspondingly increased the field of vision from that figure.

The fireman, who was on the lookout and who should have seen the car approximately as soon as its driver could have seen the train, estimated the distance of this car from the track when he first saw it to have been twenty-five feet. Meyer had then gotten out and was on the running board. The rear of the car was struck and the blow was so far to the rear that it was not even overturned. Its gear had been shifted from first to second and it was going slowly and apparently under perfect control.

[1] Was the railway itself negligent? If negligent at

all, this negligence consisted in the fact that the train was traveling at a greater rate of speed than was permissible under the town ordinance. That ordinance is:

"No engine or other vehicle shall be drawn or propelled in or across any street at a greater rate of speed than fifteen miles an hour. While any locomotive or train shall be passing along or across any street, the bell on such locomotive shall be kept constantly ringing. Any person, or corporation, violating any provision of this section, or causing it to be done, shall be fined not less than five nor more than ten dollars for every such offence. In case such fine be not paid by the person incurring the same, the company by which he is employed shall be liable for such fine."

This is a reasonable ordinance and if it was violated by the defendant, then the defendant was negligent. *Washington, etc., R. Co.* v. *Lacey*, 94 Va. 460, 26 S. E. 834; *Atlantic Coast Line R. R. Co.* v. *Tyler*, 124 Va. 484, 98 S. E. 641; and *Wilmouth* v. *Southern Ry. Co.*, 125 Va. 511, 99 S. E. 665.

[2] We shall not undertake to discuss the conflicts in testimony. There was a verdict for the plaintiff confirmed by the trial judge and so this case is before us as on a demurrer to the evidence.

[3, 4] A witness, Johnson, was standing on the Jefferson Highway and saw the train as it passed within the field of vision limited by the Turner building and the Slachter building. His evidence is that it was then running "at least between twenty and twenty-five miles an hour." He estimated that it was then about fifty yards from the crossing. This estimate of distance, as shown by the map, was inaccurate. He might have been placed so that he saw it after it had passed the water tank, in which case it would have been about 140 feet from the center of the crossing, and if he could

not have seen if after it reached the tank, he saw it 172 feet away. In no possible condition was the crossing a train-length distant.

It is true that the evidence does not show just where Johnson stood, but there is no dispute about the fact that such view as he had was by looking between the Turner and the Slachter buildings, and so by way of compromise we have assumed that he was on the highway at a point midway between them, but if we place him in the most unfavorable possible position he saw the train when the engine was 240 feet from the crossing and it was possible for him to continue to see it until after the engine had passed that point. The presumption of continuity of speed obtains. Moreover, nothing was done to check this speed until the car was seen, when the engine was only twenty-five feet from the point of accident. Nor can we assume that this witness saw only the engine and not the train. The tail travels with the head. There was air pressure for the brakes of from ninety to ninety-five pounds. The emergency was applied when the car was first seen and the train must have rolled after this application about 486 feet. When it stopped the rear car stood on the crossing. It may be that a train like this, with six coaches, going fifteen miles an hour, on a track practically level and not wet, could not be stopped in a lesser distance, but it does not seem reasonable, and a witness, Copley, has testified that it could be stopped within the length of a car and a half. Perkins, a witness for the defendant, who saw the accident, said that when he first saw the car it was ten feet south of the main track and that the train was twenty-five yards or seventy-five feet east of the crossing. If this is an accurate estimate and if the car was going only three miles an hour, the train was then going more than twenty miles

an hour, all of which corroborates the evidence of Johnson.

From this it appears that there was sufficient evidence to sustain the judgment of the jury which was that the train was traveling more than fifteen miles an hour and that in so doing the railway was negligent.

[5] Was there any substantial causal connection between this excessive rate of speed and the accident? It is true that it was not the sole proximate cause, but it was a proximate cause. It was a cause without which the jury would have been well justified in believing that the accident would never have occurred. The rear of the automobile was barely touched. A delay of a fraction of a second would have permitted it to pass in safety, and so we reach the conclusion not only that the defendant was negligent, but that its negligence immediately contributed to the accident, but for it there never would have been any collision. *Etheridge* v. *Norfolk Southern R. R. Co.*, 143 Va. 789, 129 S. E. 680.

[6] Can the plaintiff be charged with primary or imputed negligence as a matter of law? Wherein did decedent's conduct differ from that of an ordinarily prudent man? We may and should assume in the absence of evidence that he did what he ought to have done, that is to say, that he was on the lookout and saw the approaching train. He had the right to assume that the driver had done the same, for he must have known that she had shifted the gear and had cut down the speed of her car until it was under complete control. Certainly there was nothing in this situation to alarm him or to indicate that he was rushing into a place of patent peril. An automobile traveling as this was could have been stopped almost instantly, and he was justified in believing that it would be stopped in ample

time. However when he had come within twenty-five feet of the track, and when there was no additional indication of any such intention on her part he became alarmed. He may have protested. We shall never know. But we do know that he tried to get out of the car and was killed in the attempt.

[7] It is true that a passenger cannot blindly trust to his driver, but in the nature of things one on the back seat is not required to exercise that degree of vigilance which is demanded of the chauffeur. *Director General v. Lucas,* 130 Va. 212, 107 S. E. 675; and *Hancock v. Norfolk and Western Railway Company,* 149 Va. 829, 141 S. E. 849, *infra.*

[8] The record indicates that the driver was negligent, but if she was that negligence cannot be imputed to Meyer, whether he be regarded as a guest or as a passenger in a private car. *Washington and O. D. Ry. Co. v. Zell,* 118 Va. 755, 88 S. E. 309; *Virginia Ry. & Power Co. v. Gorsuch,* 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838; *Director General v. Pence,* 135 Va. 329, 116 S. E. 351; *Virginian Ry. Co. v. Farr,* 147 Va. 217, 136 S. E. 668; *Seaboard Air Line Ry. Co. v. Terrell,* 149 Va. 344, 141 S. E. 231; and *Hancock v. Norfolk & Western Ry. Co.,* 149 Va. 829, 141 S. E. 849, decided March 1, 1928.

[9] The plaintiff's decedent can be charged, as a matter of law, with neither primary nor imputed negligence.

In this connection negligence as a matter of fact naturally suggests itself. It may have been, and doubtless was, urged with earnestness that this is shown by the evidence; that after the peril was actually known decedent had a clear chance to escape; that there were intoxicants in the car, in short that this

man was guilty of contributory negligence as a matter of fact if not as a matter of law.

These issues were preeminently for the jury. About them reasonable men might have differed and so we are precluded by the verdict if it was properly instructed.

[10] This instruction given for the plaintiff is charged to be erroneous:

"The court instructs the jury that if you believe from a preponderance of the evidence that the defendant was guilty of negligence charged in the notice of motion for judgment, and such negligence was the proximate cause of the injuries and death of George Edgar Meyer, you shall find for the plaintiff unless you further believe that the said George Edgar Meyer was guilty of contributory negligence."

Upon this instruction the Supreme Court of Appeals has more than once placed its seal of disapproval and it should not be given. *Curtis & Shumway* v. *Williams* (Va.) 86 S. E. 848 (not officially reported). Here the count contained three and a half pages. *Jones* v. *Richmond*, 118 Va. 612, 88 S. E. 82. The declaration in this case was long and involved. *Director General* v. *Pence, supra;* and *Southern Ry. Co.* v. *May*, 147 Va. 542, 137 S. E. 493. There the court said:

"In the *Pence Case, supra*, the court, condemning a somewhat similar instruction, said: 'It practically turns the jury loose to find the defendant guilty of any negligence which might be based upon a breach of "any duties charged in the declaration," which declaration covers ten pages of the printed record. It is not a simple or easy task to analyze the charges of negligence intended to be set forth in this declaration, and it was not safe to impose that task upon the jury.'

[11] "The rule invoked is not ironclad and does not apply in every case. Judge Kelly, who wrote the

opinion in the *Pence Case*, says, at page 349 (116 S. E. 358): 'We do not mean to lay down a hard and fast rule that a reference to "the negligence charged in the declaration" in an instruction shall in every case be construed as reversible error, even though it be necessary for the jury, before rendering its verdict, to look to the declaration to find what the negligence complained of is. Sometimes a declaration is very brief and simple. Every case in this respect must depend upon its own facts. Where the reason of the rule exists, the rule will be applied; otherwise not.' "

[12] The motion in this case is "very brief and simple." That there was no confusion is recognized in the petition for a writ of error, where it is said:

"While, as already stated, a number of grounds of negligence were alleged in the notice of motion, it was manifest at the conclusion of the evidence that counsel for the plaintiff relied solely upon the charge based on the speed of the train."

We concur in the view that the issue was "manifest" when the case was closed and we do not think that the jury could have been misled by this defective instruction. It does not constitute reversible error.

Objection is made to this instruction, also given on motion of the plaintiff:

"The court instructs the jury that if you believe from the evidence that the defendant approached and operated its train over the crossing where Meyer was killed at a greater rate of speed than fifteen miles an hour, that such fact alone is evidence of the negligence of the defendant."

The matter here suggested has already been dealt with.

Instructions E, F and G were tendered on behalf of the defendant and refused by the court.

[13] This is instruction E:

"The court instructs the jury that a passenger who sits quietly in an automobile while approaching a railroad crossing and allows the driver to take him into a place of danger without effectively exercising his sense for his own protection, or without warning the driver, or making a protest, is guilty of contributory negligence as a matter of law." The evidence does not support it.

[14] Instruction F:

"The court instructs the jury that a railroad track is of itself a notice of danger to a traveler and that a person approaching a railroad crossing must not only use his eyes and ears, looking and listening in both directions, but must, when about to cross the track, look and listen so as to make these acts reasonably effective. If such looking or listening did or would warn him of the near approach of the train, then it is the duty of such person approaching a crossing to keep off a track until the train has passed. And if the jury believe from the evidence that the plaintiff's decedent in this case did not look and listen in both directions as he approached the crossing of the defendant, or that he did not continue to look and listen using reasonable care to make such looking and listening effective in both directions until he reached the main track of the defendant, the plaintiff was guilty of contributory negligence, and the jury should find for the defendant."

It is true that upon the approach of a crossing both the driver and the passenger must exercise ordinary care to avoid an accident, but that degree of vigilance required is not the same in each instance. The passenger does, and must of necessity, in a large measure rely upon the driver. *Director General* v. *Lucas, supra.* If this were not true, we would have as many drivers as

there chanced to be passengers, and so this method of locomotion would become even more hazardous than it now is. Something must be left to the pilot. This instruction makes no such distinction and it might well have led the jury to apply the wrong yardstick. What is ordinary care in one set of circumstances may be negligence in another. This instruction was properly rejected.

[15] Instruction G is:

"The court instructs the jury that if they believe from the evidence that the plaintiff's decedent was himself guilty of negligence when the automobile in which he was riding crossed or attempted to cross the railway tracks, upon the occasion of his injury, and such negligence efficiently contributed to cause the injuries received, then the plaintiff cannot recover in this action even though the jury may believe from the evidence that the defendant was negligent."

This was a proper instruction and might have been given.

The court, however, had already in instructions 1 and 2 given at the instance of the plaintiff told the jury that plaintiff could not recover if Meyer was guilty of contributory negligence. Having once stated this rule, it was not necessary that it be repeated.

We find no reversible error in the ruling of the trial court upon instructions.

[16] In conclusion, it is said that the court erred in admitting a witness, Paul Copley, to testify as an expert. It appears that this witness was an engineer of nine years' experience and before promotion had been a fireman. He testified that he had been a fireman on a passenger engine for ten years regularly. He was familiar with the type of engine which did the damage. His experience as a passenger engineer was quite limited, but he had for a number of years

operated engines in yard movements and as fireman he had had opportunities to observe the braking of trains in passenger service. We think he was qualified. It is not necessary that such a witness be "highly qualified." *Cates* v. *Commonwealth*, 111 Va. 857, 69 S. E. 520, 44 L. R. A. (N. S.) 1047.

[17] "The admissibility of expert evidence is largely a matter in the discretion of the trial court, and its ruling allowing a witness to so testify will not be reversed unless it clearly appears that he was not qualified. *Richmond Locomotive Works* v. *Ford*, [94 Va. 627, 27 S. E. 509], *supra; Lane Bros.* v. *Bauserman*, 103 Va. 146, 48 S. E. 857, 106 Am. St. Rep. 872. We do not perceive that this discretion was abused in the present case." *Reid* v. *Medley*, 118 Va. 462, 469-70, 87 S. E. 616, 618.

It follows from what has been said that the judgment complained of must be affirmed and it is so ordered.

*Affirmed.*