JOHN A. LYONS, Defendant in Error, *vs.* THE CHICAGO CITY RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed February 20, 1913—Rehearing denied April 2, 1913.*

1. EVIDENCE—*exception to rule that opinions of witnesses are not admissible.* An exception to the rule that the opinions of witnesses are not admissible exists in the case of expert witnesses testifying upon subjects which are not within the knowledge of all men of common education and experience.

2. SAME—*witness' opinion at the time of the trial is the only one admissible.* It is the opinion of the expert witness at the time of the trial that is admissible upon direct examination and not an opinion he once had.

3. SAME—*opinion based upon mere conjecture is not proof of a fact.* An opinion of a physician as to the existence of an injury is not admissible where his testimony shows it is based merely upon conjecture.

4. SAME—*when testimony of physician is not admissible.* Testimony by the physician who treated the plaintiff at the time of his injury that "I formed an opinion that he might have a fracture of the anterior fossa, which is above the eye, * * * for the reason that the injury to the eye,—the blood-shot eye appearance,— appeared late; * * * I could not have an absolute opinion on that without an X-ray plate showing that fracture of the orbital plate," is not admissible, and the error in its admission is not one which can be cured by a *remittitur*, as it is impossible to say to what extent it influenced the amount of the verdict.

5. SAME—*when testimony that witnesses did not hear shouting is not admissible.* Testimony by two witnesses, who were more than a block away from the place where the plaintiff was struck by a street car, that they did not hear any shouting is not admissible; but its admission is not reversible error, where it was subsequently stricken out and the jury instructed not to consider evidence which was stricken out.

6. SAME—*instructions should leave the jury free to pass upon credibility of witnesses.* On the trial the court should leave the jury free to pass upon the credibility of witnesses and determine the weight to be given the testimony, and it is not the province of the court to tell the jury what evidence is the strongest; and while it may be proper to enumerate elements which the jury may consider in weighing the evidence, an instruction which states they "must" or "should" consider such elements may be misleading.

FARMER, J., dissenting.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

S. S. PAGE, and C. LEROY BROWN, (LEONARD A. BUSBY, of counsel,) for plaintiff in error.

JAMES C. McSHANE, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Under an amended declaration the defendant in error recovered damages of $7000 in the circuit court of Cook county against the plaintiff in error for injuries alleged to have been sustained February 1, 1908, by being struck by a street car snow plow. On appeal from a judgment of the circuit court the Appellate Court required a *remittitur* of $2500 or the judgment would be reversed and the cause remanded. That amount was remitted and judgment entered for $4500. The case has been brought here by writ of *certiorari.*

Defendant in error was a practicing physician about fifty-four years of age. On the evening of the accident he was making a professional call on the south side, in Chicago, after which he went to Calumet avenue and Sixty-ninth street to board a street car. There were five or six inches of snow on the ground, and the evidence tends to show that it was at that time snowing and blowing. For

the purpose of clearing the snow from the track and road-
way on Sixty-ninth street plaintiff in error had attached a
snow plow rigging to one of its old-fashioned short pas-
senger cars.  The plow consisted of a plank about fifteen
feet long and eighteen inches wide, the forward end of
which was fastened to the front trucks, and the board ex-
tended outward and backward at such an angle that the
outer end was about eight or nine feet outside the north
rail of the track, an iron bar connecting with the car serv-
ing as a brace.  Four employees of the plaintiff in error
company were upon the car and snow plow attachment as-
sisting in its operation,—a motorman, another employee on
the front platform with him, a third standing on the snow
plow attachment and holding on to the car, and a fourth
on the rear platform.  Defendant in error waited at the
north-west corner of Sixty-ninth street and Calumet ave-
nue for a passenger car which would carry him west to
State street.  He mistook this car on its approach for a
regular passenger car and stepped out into the way of the
projecting wing or snow plow.  He was struck and thrown
down.  The testimony tended to show that one of his col-
lar bones was broken, that he was bruised and sustained
injuries about the head.  The theory of the amended dec-
laration was that the employees of plaintiff in error had an
opportunity to see defendant in error on the street, exposed
to danger, and neglected to warn him of the danger, and
also failed to stop the car in time to avoid the injury.

The testimony of the employees of plaintiff in error on
the car tends to show that the car was approaching from
the east at a slow rate of speed, averaging about five miles
per hour, and as it neared Calumet avenue, throwing the
snow to the west and north-west nearly to the curb, de-
fendant in error was seen coming from the north on the
west side of Calumet avenue; that when he reached the
north side of Sixty-ninth street he slowed up in his walk
if he did not entirely come to a stop; that the motorman

slowed up the car in order to see what defendant in error intended to do, at the same time striking the bell three or four times and shouting to defendant in error to look out; that thereupon the speed of the car was increased; that when its front end was even with the cross-walk the other employee on the front end shouted to defendant in error to look out, and at the same time the man standing on the plow, on the north side of the car, "hollered" out to him; that the car was stopped just after the snow plow attachment reached the defendant in error.

The evidence of defendant in error was to the effect that when he reached Sixty-ninth street from the north, on Calumet avenue, there was no car in sight and he stood there, waiting, two or three minutes; that he saw a car coming from the east when it was two blocks away; that when it was about fifty feet distant he stepped from the sidewalk into the street toward the west-bound track; that the car had the appearance of an ordinary street car as it came toward him; that nothing about it, either as to noise or outside appearances, indicated to the contrary; that he walked about six or eight feet from the curb, where he waved his hand for the car to stop; that he did not discover that it was not an ordinary street car until the front part of the car was opposite him, at which time he saw the man standing on the plank, with his head inside the car through an open window; that he thereupon attempted to get out of the way of the plank by jumping; that no one shouted or called to him or gave him any warning, nor was there any ringing of the bell before he was struck by the board; that he had nothing over his ears; that he had never seen a snow plow of that kind before.

The four employees of plaintiff in error and defendant in error himself were the only eye-witnesses of the accident. The evidence on the question of negligence, while conflicting, warranted submitting the case to the jury.

It is first urged that error was committed in the admission of evidence. Dr. Ferguson, a friend of defendant in error, examined him on the night of the injury and attended him during the four days he remained at the hospital. He stated somewhat fully the symptoms and history of the case. He testified, among other things, that he discovered that defendant in error had a bruise on the left side of the face, and that in about three days the left eyeball became blood-shot and a swelling developed behind the ear in the occipital region,—not at the base but completely behind the brain; that he complained about his eyesight being impaired and that he could not hear in the left ear. The doctor was then asked by counsel for defendant in error, "Have you any opinion, as a medical man, as to the cause of the conditions you have described in the eye and the other conditions you have described?" After an objection to this question, and before he answered, he was asked the question, "Have you any opinion, as a medical man, as to what the symptoms indicate?" Objections were made to this question, which were overruled, and he answered, "Yes, sir." He was then asked, "What is your opinion?" to which question objections were again made and overruled. His answer was: "My opinion of the swelling behind the ear was a local bruising,—just a local direct injury; I formed no opinion as to what caused his deafness; I was of the opinion, because of the blood-shot condition——" At this point objections were made, counsel for plaintiff in error saying: "He says now he formed an opinion; he is not answering the question put here; he is going back to another time." The objection was overruled and he was told to finish his answer, when he continued: "I formed the opinion that he might have a fracture of the anterior fossa, which is above the eye,—a fracture of the bone,—for the reason that the injury to the eye,—the blood-shot eye appearance,—appeared late; it did not appear immediately, as it does after a direct blow; it ap-

peared between the third and fourth day." After certain
discussion between counsel he continued, "I could not have
an absolute opinion on that without an X-ray plate show-
ing that fracture of the orbital plate." Thereupon counsel
for plaintiff in error moved to strike out the answer about
the eye and as to his opinion what might have been, as
incompetent, irrelevant and immaterial and not based on
proper evidence. This objection was overruled and the evi-
dence permitted to stay in the record. It is objected that
this evidence was inadmissible because the witness did not
state what his opinion was at the time he testified but
the opinion he had formed a few days after the accident.
Counsel for the defendant in error insist that, reading the
entire testimony together, it is clear that the witness was
giving his opinion, at the time he was testifying, as to
what the symptoms he testified about indicated. With this
we cannot agree. The witness' opinion at the time of the
trial was the only opinion evidence which he could prop-
erly give on direct examination. The objection made by
counsel for plaintiff in error clearly pointed out that the
answer of the witness was defective in this regard. For
this reason, if for no other, the answer should have been
stricken, and if the evidence was admissible the witness
should have stated the opinion he then had as to what these
symptoms indicated and not what opinion he formed long
previous.

We might not be disposed to reverse for this error
alone. There is, however, a more serious objection to the
admission of this testimony. It is, that the evidence was
clearly speculative and therefore not competent. The gen-
eral rule is that witnesses should testify to facts and not
to opinions. (1 Elliott on Evidence, sec. 671.) The opin-
ions of witnesses are, in general, irrelevant. A learned
writer on evidence has said that if it were the rule "that
witnesses might be allowed to state not only those mat-
ters of fact about which they are supposed to have knowl-

edge but also the opinions they might entertain about the facts in issue, the administration of justice would become little less than a farce." (Jones on Evidence,—2d ed.—sec. 359.) To this general rule there are, however, important exceptions. One of the most important is found in cases in which the opinions of experts are received in evidence. Evidence of this character is usually held admissible upon subjects that are not within the knowledge of all men of common education and experience. (*Yarber* v. *Chicago and Alton Railway Co.* 235 Ill. 589, and cases cited.) Opinion evidence is said to be admissible, from necessity, as the best evidence, under certain circumstances, possible to be obtained. (1 Elliott on Evidence, sec. 675; 12 Am. & Eng. Ency. of Law,—2d ed.—422, and cases cited.) In many cases where the subjects under investigation are wholly unfamiliar to the jury, if expert testimony were rejected there could be no adequate way of arriving at a satisfactory conclusion. Because of this, "courts have adopted the rule of admitting the opinions of witnesses whenever the subject matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance." (Jones on Evidence,—2d ed.—sec. 367.) While it is often difficult to draw the line between legitimate inference and bare conjecture, only such inferences may be drawn as are rational and natural. (14 Ency. of Evidence, 99, and cases cited.) Mere surmise or conjecture is never regarded as proof of a fact and the jury will not be allowed to base a verdict thereon. (14 Ency. of Evidence, 76, and cases cited.) No one is permitted to testify to what he has never learned, whether it be ordinary or scientific facts. (*Elliott* v. *VanBuren,* 33 Mich. 49.) If a witness has not sufficient and adequate means of knowledge his evidence should not be considered. (Starkie on Evidence,—10th Am. ed.—172.) A surgeon may testify as to the nature of a wound and as to the effects or con-

258 – 6

sequences which may be reasonably expected to happen,—
not merely speculative or possible. (1 Wharton on Evi-
dence, sec. 441; Jones on Evidence,—2d ed.—sec. 378;
12 Am. & Eng. Ency. of Law,—2d ed.—447, and cases
cited.) If it form a proper basis for recovery it is neces-
sary that the consequences relied on must be reasonably cer-
tain to result. They cannot be purely speculative. (*Lauth
v. Chicago Union Traction Co.* 244 Ill. 244, and cases cited;
*Murphy* v. *Boston and Albany Railroad Co.* 167 Mass. 63.)
That Dr. Ferguson wished to have it understood that his
testimony as to the fracture of the skull was based upon
conjecture and was not a positive opinion is manifest from
reading his entire testimony. Counsel for defendant in er-
ror must have so understood it, for he asked Dr. Ferguson,
in referring to an optic nerve about which he had been tes-
tifying, "How close does it pass to this point where you
suspected there might be a fracture?" And when answer-
ing the question, "You are not telling either the court or
the jury here that this man did have a fracture of the
frontal bone, are you?" the witness said, "No." If this
physician had testified that from his experience in such
matters his judgment was that there was a fracture of the
frontal bone, such evidence, under the authorities, might
have been admissible, but when the testimony showed that
his opinion was based on a mere conjecture it was not ad-
missible. What effect this speculative, conjectural testi-
mony had on the jury it is impossible to state. Defendant
in error was a physician and was insured in two accident
companies providing for indemnity for both complete and
partial disability. He was willing to settle with one of the
companies on the basis of seven weeks' disability and with
the other on ten weeks. Everyone particularly dreads in-
juries to the skull. The jury brought in a verdict of $7000.
The Appellate Court, after considering the evidence as to
the extent of the injury, required a *remittitur* of $2500. It
may be that this improper evidence accounted for a large

part of the verdict. Such an error in the admission of evidence is not susceptible of computation, and even a *remittitur* cannot cure it. *Lauth* v. *Chicago Union Traction Co. supra; Chicago City Railway Co.* v. *Henry,* 218 Ill. 92; *Shaughnessy* v. *Holt,* 236 id. 485. .

Counsel for plaintiff in error further contend that the court erred in admitting the testimony of two witnesses as to what they heard and saw near where the accident occurred. Vernon avenue is two blocks east of Calumet avenue. These two witnesses were walking north on Vernon avenue, something less than one hundred feet south of Sixty-ninth street, when this car with the snow plow attachment passed west on the latter street. They testified that when the car passed Vernon avenue it looked no different from an ordinary street car; that on reaching Sixty-ninth street they turned west, and after they had gone about a half block they saw a car stop at Calumet avenue but did not hear any shouting at or about that time. The latter portion of this testimony was afterward stricken out on motion of counsel for defendant in error. It is most earnestly insisted that this evidence was not admissible and that the striking out of a certain part did not cure the error in admitting it, as the evidence as to no shouting was purely negative in character. Whether evidence of this character be admissible depends largely, if not entirely, upon the circumstances of each case. Had these two witnesses been on Sixty-ninth street, within fifty or one hundred feet of the place of the accident, without question such evidence would have been admissible. We are disposed to hold, in view of the surrounding circumstances as testified to in this record, the evidence as to not hearing any shouting was not admissible, as they were more than a block away from the place of the accident. The court instructed the jury that they should not consider evidence that had been stricken out. We do not consider that in this state of the record the court committed reversible error in first admitting it.

In this connection it is further urged that the witnesses should not have been permitted to testify that when the car passed them it had the appearance of an ordinary passenger car, as the snow plow attachment was shown by the evidence to have been on the opposite side of the car from that from which they were approaching. This part of their evidence was unimportant. We do not think the jury were misled thereby.

It is further objected that the court erred in giving instruction 36 for the defendant in error. That instruction reads, in part, as follows: "The preponderance of evidence in a case is not, alone, determined by the number of witnesses testifying to a particular fact or state of facts. In determining upon which side the preponderance of evidence is, the jury should also take into consideration, so far as shown by the evidence, the opportunities of the several witnesses for seeing or knowing the things about which they testify," etc. Then follows an enumeration of certain matters proper to be considered by the jury in deciding as to the preponderance. It is insisted that this instruction is misleading because, it is argued, it is not always true that the preponderance of the evidence does not consist, alone, in the number of witnesses on each side; that where witnesses appear to be of equal credit and there being nothing else to impeach or contradict their testimony, the number of witnesses testifying on either side might be, and in many cases ought to be, a controlling factor. It is further insisted that the instruction is wrong because it uses the word "should" instead of "might" or "may." This court has refused to reverse because of the giving of instructions substantially like the one here in question. (*Meyer* v. *Mead,* 83 Ill. 19; *Chenoweth* v. *Burr,* 242 id. 312, and cases cited.) While it may be proper to enumerate elements which the jury may consider, an instruction which tells them they "must" or "should" consider is liable to be misleading. (*Chicago Union Traction Co.* v. *Hampe,* 228 Ill.

346.)    On the trial of the case the court should leave the jury perfectly free and untrammeled to pass upon the credibility of the witnesses, determining for themselves the weight to be given to the testimony.    (*Otmer* v. *People,* 76 Ill. 149.)    It is not the province of the court to tell the jury in any case what evidence is the strongest.    (*Rockwood* v. *Poundstone,* 38 Ill. 199.)    It is the peculiar province of the jury to weigh the evidence and determine for themselves its weight.    Their privilege in that regard should not be interfered with by the court.    (*Louisville, New Albany and Chicago Railway Co.* v. *Shires,* 108 Ill. 617; *Chicago and Alton Railroad Co.* v. *Robinson,* 106 id. 142.) We do not consider that the giving of this instruction on this record was reversible error, but instructions of this character should not limit, in any case, the jury to the consideration of matters particularly and specifically mentioned and pointed out in the instruction.

The evidence as to the negligence of plaintiff in error was very conflicting.    Under such circumstances the court should have exercised great care as to its rulings on the admission and exclusion of evidence.    Furthermore, as we have already stated, the Appellate Court considered the verdict of the jury excessive and required a *remittitur.*    On this state of the record we can reach no other conclusion than that the admission of the incompetent testimony of Dr. Ferguson with reference to the possibility of a fracture of defendant in error's skull amounted to reversible error.

The judgment of the Appellate Court will be reversed and the cause remanded to the circuit court.

*Reversed and remanded.*

Mr. JUSTICE FARMER, dissenting.