Patricia L. **KISSINGER**, Administratrix of the Estate of Lee N. Kissinger, deceased, and Harold M. Stern, Ancillary Administrator, Plaintiffs,

v.

James **FRANKHOUSER** and United States of America, Defendants.

Civ. A. No. 3133.

United States District Court
E. D. Virginia,
Norfolk Division.

May 19, 1961.

Stanley E. Sacks, Norfolk, Va., for plaintiffs.

Taylor, Gustin, Harris & Furniss, Norfolk, Va., Jos. S. Bambacus, U. S. Atty., Richmond, Va. (Roger T. Williams, Asst. U. S. Atty.), Norfolk, Va., for defendants.

WALTER E. HOFFMAN, District Judge.

In this action involving the death of Lee N. Kissinger, a guest passenger in an automobile operated by the defendant, James Frankhouser, the jury returned a verdict against the defendant, Frankhouser, in the sum of $18,900. In plaintiffs' action against the United States judgment was entered in favor of the defendant.

The basis of plaintiffs' claim of gross negligence is grounded upon the intoxication of the defendant. The defendant recalls having consumed seven or eight beers prior to eight p. m. on October 15, 1959, but thereafter has no recollection of the occurrences of the evening. He contends that his faulty memory is due to the injuries received, although this theory is not supported by medical testimony. The fatal accident took place during the early hours of October 16, 1959.

Defendant has filed a motion for a new trial. The only point meriting discussion is the admissibility in evidence of the official record of the United States Naval Hospital with respect to the tests and treatment administered to defendant following his admission early that morning. It was stipulated that the record was regularly maintained by the Hospital in the ordinary course of its business affairs. Under such circum-

stances the record is customarily admissible under the Federal Business Records Act, 28 U.S.C.A. § 1732.

Some comments as contained in various parts of the record are not objected to by the defendant. For example, an entry indicating "alcohol odor to breath" merely corroborates defendant's statement of his prior consumption of beer earlier that same night. The record, however, goes further. Under the heading "initial impression," Dr. J. M. Marlowe, who was not produced as a witness due to his transfer from the hospital in the interim, wrote the words "simple drunkenness." The main objection centers around another entry made by Dr. Marlowe as follows:

"10/16/59 Bogans—2.5 mgm. @ 0315 —J. M. Marlowe."

Testimony was admitted interpreting the effect of a Bogen's test revealing 2.5 mgm., from which it appears that blood containing 2.5 mgm. of alcohol will render a person drunk beyond any possible ability to operate a motor vehicle.

A hospital mate, third class, named Gibson took the blood from the defendant at 3:15 a. m. on October 15, 1959. At the time of the accident he had served as a laboratory technician for a period of eighteen months and had been instructed as to the proper procedure in withdrawing blood for a Bogen's test. Gibson testified that he had performed the same task on many occasions and was well aware of the precautions required to secure an accurate test. He stated, however, that he was not qualified to evaluate the test and did not attempt to do so. After withdrawing the blood and placing it in the proper container, he delivered the blood to the physician.

While no mention was made at the time of trial with respect to the hematology reports exhibited on pink slips made a part of the record, this evidence went to the jury. The Court must, therefore, assume that the entire contents of the hospital record were inspected by the jury.

As it was necessary for the plaintiff to prove gross negligence on the part of the defendant, the admission of the hospital record could not be considered harmless error, if it was, in fact, error to receive the same in evidence.

Subsequent to the argument on the motion to set aside the verdict, the Court concluded to determine more thoroughly the manner of administering the test and the method of evaluating same, with the view of ascertaining the required training on the part of the individual physician. Ramon Morano, who testified as to the effect of a 2.5 mgm. Bogen's test at the trial, was again examined. Morano is a thoroughly qualified toxicologist attached to the State Medical Examiner's Office. He expressed the view that the giving and evaluating of the Bogen's test was not complicated, but that it did require the services of experienced persons in arriving at a reasonably accurate conclusion which even then could be "slightly off" as it is almost impossible to evaluate the test to an exactness.

That Gibson was thoroughly qualified to draw the blood and prepare the containers for evaluation cannot be doubted. Moreover, the jury had the opportunity to see and hear Gibson. No opportunity was afforded the defendant to cross-examine the evaluating physician who, at the time of trial, was assumed to have been Dr. Marlowe.

It is now clear that Marlowe did not perform the evaluation of the Bogen's test. The hematology reports reflect that this was done by Dr. R. P. Heldt, holding the rank of Lieutenant, Medical Corps, U. S. Navy. Gibson, the hospital mate third class, was recalled following the trial and, after examination of the entire file, he stated that Dr. Heldt was the individual performing the service of evaluating the Bogen's test. Heldt was not called at the time of the trial and the exact time of his transfer or release from the Navy is unknown. In any event, he is no longer in this locality. Counsel for both plaintiffs and defendant were afforded the opportunity of ascer-

taining the whereabouts of Dr. Heldt, but preferred to stand upon the record. Gibson testified, on the evidence taken following the verdict, that Dr. Heldt has frequently evaluated such tests on prior occasions. Gibson was with Dr. Heldt when this particular Bogen's test was evaluated and, while Gibson never officially evaluated a test, he knew how it was done.

The hematology report was substantially in the handwriting of Gibson; the exceptions being that the words "2.5 mg. %, R. P. Heldt, Lt. M. C. U. S. N." appears in the handwriting of Dr. Heldt, and the wording under "Requested By" and "Date of Request" were written by someone other than Gibson.

In admitting the hospital record in evidence, the Court told the jury that it could consider the same, along with all of the other evidence in the case, but that the report was not conclusive and that the jury could give it such weight as it deemed proper.

With this background the sole question turns upon the admissibility of the hospital record. No part of the record was eliminated from consideration by the jury.

In Shaffer v. Seas Shipping Company, 3 Cir., 218 F.2d 442, the plaintiff's hospital record giving an account of how the accident occurred was permitted to go to the jury even though the court had previously rejected this portion of the history. The trial court, upon consideration of plaintiff's motion for a new trial, arrived at the conclusion[1] that the record was admissible under the authority of Tucker v. Loew's Theatre & Realty Corp., 2 Cir., 149 F.2d 677, 680. The trial court disagreed with the majority decision in New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297, and stated that the view taken by Justice Edgerton in the dissent was in accord with the purpose and intent of the Federal Business Records Act, 28 U.S.C.A. § 1732. On appeal the Third Circuit agreed that the entire record was admis-

sible, relying upon the Tucker case, Pollack v. Metropolitan Life Ins. Co., 3 Cir., 138 F.2d 123, and Norwood v. Great American Indemnity Co., 3 Cir., 146 F.2d 797. The court pointed out that Rule 61 of the Federal Rules of Civil Procedure, 28 U.S.C.A., directs the district court not to order a new trial unless refusal appears inconsistent with substantial justice and, under the provisions of 28 U.S.C.A. § 2111, "the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

While it may be true that if error was committed, it was prejudicial, nevertheless we note that the name of Dr. Heldt appears on numerous pink slips under hematology reports and blood chemistry reports. It is difficult to believe that one whose name appears so frequently throughout the record in specialties relating to hematology and blood chemistry would not be capable of evaluating a Bogen's test, especially when the hospital mate testified that this doctor had evaluated like tests on frequent occasions.

The District of Columbia Court of Appeals has consistently maintained that the written record of an expert medical opinion as to a psychiatric disorder is not admissible under the Act. Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725, 731; New York Life Ins. Co. v. Taylor, supra. It is suggested that the opinion of a psychiatric expert is not an "act, transaction, occurrence, or event." At the same time the court points out that certain observations of physical facts such as temperature, pulse rate, age, weight, etc., recorded in the normal course do meet the tests of "reasonable reliability." In Washington Coca-Cola Bottling Works v. Tawney, 93 U.S.App. 151, 233 F.2d 353, the same court approved of the introduction in evidence of a medical record reflecting the presence of fragmented glass and fissures discovered during a rectal examination, when the physician who made the examina-

1. Shaffer v. Seas Shipping Company, D.C.E.D.Pa., 127 F.Supp. 384.

tion and entries was not called as a witness.

■ An analysis of the authorities manifestly places the evaluation of the Bogen's test under the category of an observed physical condition and not an opinion. True, it must be evaluated by one of experience, but the same is not unlike many diagnoses made by physicians. As an exception to the hearsay rule, the final test of admissibility depends upon necessity and circumstantial guaranty of trustworthiness. Even prior to the enactment of the Federal Business Records Act, the Fourth Circuit, in an opinion by Judge Parker, sustained the admissibility of a medical record containing a diagnosis of "choroiditis bilateral" as to plaintiff's ailment. United States v. Wescoat, 4 Cir., 49 F.2d 193. Certainly in the instant case the entries were made by highly intelligent officials of the government in discharge of their official duties, with no motive to state anything but the truth and subject to reprimand and humiliation in the eyes of their professional associates if they were inaccurate.

An interesting discussion of the subject is contained in Medina v. Erickson, 9 Cir., 226 F.2d 475, 482–483. The right of cross-examination of the doctors whose findings were set forth in the hospital record was denied. These findings diagnosed the patient's condition as "bronchogenic carcinoma" and "metastasis of the liver." Contrasted with Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, where the reports were made for the purpose of "litigating" and hence inadmissible, reports made on the professional integrity of the entrant bore the seal of trustworthiness.

The Bogen's test is now a familiar means of determining alcoholic content in the blood. By statute in Virginia[2] it is provided that, in criminal prosecutions for driving while intoxicated, an accused may, within two hours of the time of the alleged offense, submit to a chemical analysis of his blood. The statute further provides that the blood shall be withdrawn by a physician, registered professional nurse or *laboratory technician*, and the sample forwarded to the Chief Medical Examiner. While the certificate of the Chief Medical Examiner as to the analysis is admissible in criminal prosecutions, it has been held that such a certificate is not admissible in civil actions. Russell v. Hammond, 200 Va. 600, 106 S.E.2d 626; Brooks v. Hufham, 200 Va. 488, 106 S.E.2d 631. Neither case discusses the propriety of admitting in evidence such a certificate under the rule respecting integrity of business records for the obvious reason that the certificate without more, lacks the essential guaranty of trustworthiness. The fact that Virginia has, by statute, seen fit to admit the certificate in criminal prosecutions is essentially for the protection of the accused who requested, but could not be compelled, to submit to the test. It merely placed upon the accused the burden or advantage of permitting the results to be exhibited in court, but likewise provided that other competent evidence bearing upon the question at issue could be introduced. Another statute, § 18.1–57, provides that if there exists as much as 0.15 per cent (comparable to 1.5 mgm.) by weight of alcohol in the accused's blood, "it shall be presumed that the accused was under the influence of alcoholic intoxicants." Thus it follows that the Bogen's test is a recognized procedure in Virginia.

■ Concluding that, under the facts and circumstances of this case, the hospital record was admissible under the Federal Business Records Act, even though the doctor who evaluated the Bogen's test was not present at the trial, and with due consideration of the charge given to the jury at the time of the admission of such evidence, the defendant's motion to set aside the verdict of the jury and grant a new trial will be denied.

Counsel for plaintiffs will present a judgment order.

2. Code of Virginia, 1950, as amended, § 18.1–55.