WILLIAM L. BUCK'S (dependents') CASE.

Suffolk.    May 1, 1961. — June 9, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, KIRK, & SPIEGEL, JJ.

*Workmen's Compensation Act,* Death. *Proximate Cause. Death. Evidence,* Opinion: expert.

Dependents of an employee seeking compensation for his death under the workmen's compensation act on the ground that there was a causal connection between inhalation of formaldehyde fumes during the course of his employment and his death had the burden of so proving by expert medical testimony.   [769]

The opinion of an expert medical witness which constitutes evidence is his final conclusion at the time of testifying; earlier contrary diagnoses by him may be considered as affecting the credibility of his final conclusion but cannot in themselves be a basis for a finding.   [770]

In a workman's compensation case in which dependents of an employee sought compensation for his death on the ground that it was caused by inhalation of formaldehyde fumes during the course of his employment and proof thereof depended solely on the opinion testimony of an expert, a pathologist, a final decree awarding compensation was reversed and the case was remanded to the reviewing board for further hearing where it appeared that the expert at the time he concluded his testimony had not seen an autopsy protocol of the decedent, which stated "Bronchial asthma" as the clinical diagnosis of the cause of death and contained microscopic findings relating to the decedent's lungs, and had not seen slides of the decedent's lung tissue, that he stated that "Without seeing those" he was "at a loss," that his opinion that the death of the decedent resulted from the inhalation of the formaldehyde fumes was in response to a lengthy hypothetical question containing a material misstatement as to the contents of the autopsy protocol, and that the reviewing board itself improperly attempted to interpret the significance of the autopsy protocol.   [770–771]

Evidence that a machinist, later deceased, had stated that X-rays showed him to be in good condition was not admissible as a declaration of a deceased person under G. L. c. 233, § 65, since he was not qualified to form such an opinion.   [772]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Barron, J.*

*Joseph P. Rooney,* (*Ansel B. Chaplin* with him,) for the self insurer.
*Charles E. Cunningham,* (*Frederick L. Conway* with him,) for the claimant.

KIRK, J. The self insurer appeals from a final decree awarding dependency compensation to the claimant widow for her own benefit and for the benefit of a minor child. It is claimed that the deceased (Buck) received a personal injury which arose out of and in the course of his employment as a machinist for the Hercules Powder Company as the result of the inhalation of formaldehyde fumes which allegedly caused or hastened his death.

The single member heard the case on May 22, 1957, and December 17, 1957. On January 6, 1958, the single member made adequate findings and reached the conclusion that "the claimant has failed to prove that . . . death . . . was caused or hastened by any exposure he may have had to chemical fumes while employed by the Hercules Powder Company." He denied and dismissed the claim. The self insurer at the hearing before the single member had saved certain exceptions to the admission of evidence, and to refusals to strike evidence, particularly the testimony of Dr. Rooney, a pathologist, who had been called as an expert by the claimant.

The claimant filed a claim of review which was heard by the reviewing board on March 3, 1958. Prior to the latter hearing the self insurer renewed in writing its exceptions to the admission of evidence and its motion to strike the testimony of Dr. Rooney. After the hearing, the board tried twice to have Dr. Rooney appear before it in November, 1958, for reasons which will be subsequently stated, but without avail.

On November 24, 1959, the board reversed the findings and decision of the single member, made painstaking detailed subsidiary findings including extensive extracts from the record, and in reliance thereon awarded compensation.

The findings, rulings, and decision of the board supersede those of the single member, *Khachadoorian's Case,* 329

Mass. 625, 627; and the findings of fact by the board are final unless lacking in evidentiary support or tainted with some error of law. *Brewer's Case,* 335 Mass. 128, 129.

We outline the history of the case which in its essentials is not disputed. Buck was employed by the self insurer April 4, 1955. He had enjoyed good health, was an out-of-doors man, and a fisherman and a hunter in his free time. As part of his job he installed and maintained pumps in the Hercules plant. In this work he was from time to time exposed to light fumes of formaldehyde. On December 3, 1955, he had a heavy dose of formaldehyde inhalation. Upon his return from work that day, he had trouble breathing. He nevertheless went hunting over the week end, but had difficulty breathing when he returned to work on Tuesday, December 6, 1955. On December 12, 1955, he was exposed to a concentration of formaldehyde fumes which caused him to cough and to have difficulty in breathing. With the claimant he made an office visit to their family physician, Dr. Wasserman, who was also the company physician for Hercules. On December 13, Dr. Wasserman sent Buck to the Sturdy Memorial Hospital in Attleboro where he stayed for about a week under the general care of Dr. Wasserman. He had a very severe cough and marked shortness of breath. He was treated by Dr. Wasserman as if he were an asthmatic, although no specific diagnosis of asthma was then made.

Following his discharge from the hospital, Buck worked only intermittently, and continued to be treated by Dr. Wasserman who noted wheezing, coughing, shortness of breath, and musical rales in the chest.

On February 4, 1956, Dr. Wasserman referred Buck to Dr. Overholt, a specialist in chest and lung surgery and in bronchoesophagoscopy, who admitted him to the Deaconess Hospital for study. He was discharged February 14, 1956. Dr. Overholt then arranged for lung tests a week later at the Pulmonary Laboratory at Mattapan, a facility of the Boston City Hospital, whose findings in summary were "entirely normal." On March 10, 1956, Buck was read-

mitted to the Deaconess Hospital where, on March 12, Dr. Overholt surgically opened Buck's chest and found that the middle lobe of the right lung was enlarged instead of being collapsed as had earlier been suspected. It did not function properly; it "trapped air," and therefore was removed. Samples of the upper and lower lobes were removed for microscopic examination. Buck was discharged from the Deaconess Hospital on March 21, 1956. He improved, but on May 5, 1956, was not entirely free of wheezing and shortness of breath. Upon medical advice he returned to work May 14 and continued at work until May 22, 1956, when he felt badly, and went home early; he had difficulty in breathing and considerable wheezing; he became weak and tired. He entered the Massachusetts General Hospital at Dr. Wasserman's suggestion June 19, 1956, and died there at 10 P.M. The autopsy protocol states in part: "Clinical Diagnoses on Death Report. Bronchial asthma, status asthmaticus. (Bronchiectasis, right middle lobe.)" The death certificate was not in evidence, although there was uncontroverted testimony not objected to that it stated the cause of death to be bronchial asthma.

The main question before us is whether the evidence is sufficient to support a finding that there is a causal connection between the inhalation of formaldehyde fumes and the death of the employee. Where such causal relation is a matter beyond the common knowledge and experience of the ordinary layman, the proof must rest upon expert medical testimony. *Josi's Case,* 324 Mass. 415, 417–418. *Sevigny's Case,* 337 Mass. 747, 749.

We have examined with care all of the evidence, including the medical testimony, the hospital records, the medical reports, and the autopsy protocol. In so doing, we have borne in mind that the question is not what conclusion we would reach if the case had been presented to us in the first instance but whether there is any evidence, including all rational inferences of which the evidence is susceptible, upon which the findings of the board could have been made, and if there is such evidence we do not disturb the findings

unless they are vitiated by some error of law. *Chapman's Case,* 321 Mass. 705, 707. *Hachadourian's Case,* 340 Mass. 81, 85.

The opinion of an expert which must be taken as his evidence is his final conclusion at the moment of his testifying. *Perangelo's Case,* 277 Mass. 59, 64. See *Clarici's Case,* 340 Mass. 495, 497. The three medical witnesses who testified for the self insurer were Dr. Wasserman and Dr. Overholt; and Dr. Burrage, who had never seen Buck, but who was an expert specialist in allergies and internal medicine. We have examined their testimony in detail and as a whole to determine whether the opinions expressed by them were indeed final opinions. We are satisfied that they were. The final opinion given by each of these doctors was that the inhalation of formaldehyde fumes was not causally related to Buck's death. Dr. Wasserman and Dr. Overholt, in the course of their treatment of Buck, had prior to the operation on March 12, 1956, made statements or entries to the effect that Buck's condition might be due to chemical fumes or to virus pneumonia as well as asthma. These working or clinical diagnoses or impressions were competent to lessen the credibility to be given by the board to their final opinions, but could not be considered in themselves as establishing a causal connection between the inhalation and the death.

On the issue of causal connection the claimant's case must stand or fall on the testimony of Dr. Rooney, a pathologist. At the time he concluded his testimony he had not seen the autopsy protocol which contained the microscopic findings relating to the lungs nor had he seen slides of lung tissue. As a pathologist he had never made a diagnosis with respect to formaldehyde fumes. He had never diagnosed or treated asthma on living persons. He had done many post mortems on asthmatics. He did not perform the autopsy on Buck. Compare *Ambrose's Case,* 335 Mass. 121, 125. In response to a very lengthy hypothetical question propounded by the claimant outlining the history of the case, but objected to because of the omission of certain

facts and the misstatements of others, Dr. Rooney flatly stated that in his opinion the death of Buck resulted from the inhalation of the fumes. His testimony, in part at least, was based upon an erroneous statement in the hypothetical question as to the contents of the autopsy protocol which was not then in evidence. The question assumed that "the autopsy protocol showed death due to pulmonary fibrosis." In fact the autopsy protocol referred to pulmonary fibrosis as one of several anatomic diagnoses, which mean conditions found but "not cause of death." The clinical diagnosis of cause of death in the autopsy protocol has already been mentioned. The misstatement in the question, however unintentional, was material, and had an important bearing on the answer given. It was not later cured. The self insurer has properly preserved its rights in this respect and saved the question. See *Charron's Case,* 331 Mass. 519, 523. Compare *Amaral's Case,* 341 Mass. 133, 135. The motion to strike should have been allowed, unless the error was corrected by a further hearing. The board made two efforts to arrange for further testimony by Dr. Rooney so that his opinion ". . . may be resolved by . . . his examining the slides or report of microscopic examination of lung tissues of the employee made at autopsy at the Massachusetts General Hospital." The further hearing was never held and the board undertook to interpret for itself the significance of the autopsy protocol which it is not competent to do. It was error not to allow the motion to strike the testimony.

We have closely scrutinized Dr. Rooney's testimony. We conclude that the effect of his testimony as finally left was not that of a witness who had given inconsistent opinions, which would permit the board to believe portions of the evidence which it deems credible, see *Luczek's Case,* 335 Mass. 675, 677–678; *Clarici's Case,* 340 Mass. 495, 497, but was that of one who had no opinion in his capacity as an expert, or at least was unable to give an expert opinion without examining the microscopic report of the Massachusetts General Hospital. He stated "Without seeing those I am at a loss."

There is a mistake of fact in the board's findings and the decree. It recites that the minor dependent was born August 4, 1955, whereas the record discloses that the parties agreed that he was born August 4, 1945.

The testimony of the claimant that her husband had told her that X-rays taken in 1955 and earlier showed him to be in good condition was inadmissible as hearsay and, being an opinion which he was not qualified to form, is not within the exception provided by G. L. c. 233, § 65. *Tafralian* v. *Metropolitan Life Ins. Co.* 316 Mass. 429, 431.

The decree is reversed. The case is to be remanded to the board for further hearing to determine the opinion of Dr. Rooney or another qualified person and for such other proceedings consistent with this opinion as the board may deem proper. *Thibeault's Case,* 341 Mass. 647, 652.

*So ordered.*